[L.A. No. 30883. Aug. 11, 1978.]

JACKIE LEE WILSON, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Terry Smerling, Fred Okrand, Jill Jakes and Mark Rosenbaum for Petitioner.

John H. Larson, County Counsel, and John P. Farrell, Deputy County Counsel, for Respondent.

No appearance for Real Party in Interest.

OPINION

MANUEL, J.—Petitioner Jackie Lee Wilson, presently incarcerated in the Los Angeles County jail, is representing himself in a pending criminal proceeding wherein he is charged with attempted escape and battery on a peace officer. By this petition for writ of mandate, he seeks to compel respondent Los Angeles County Superior Court to vacate its orders of October 11, 1977; November 7, 1977; and December 2, 1977, limiting petitioner's in-jail propria persona (hereinafter referred to as pro. per.) privileges and to enter a new order reinstating those privileges in full.

Petitioner's motion to proceed in pro. per. was initially granted in the municipal court on July 20, 1977. Petitioner renewed his motion to proceed in pro. per. upon arraignment in respondent superior court.[1] Respondent court granted this motion and, on September 6, 1977, ordered that petitioner be allowed full pro. per. privileges at the county jail.[2] Respondent court also granted petitioner's motion for appointment of an investigator, authorized up to $500 therefor, directed the sheriff to allow petitioner access to specified legal supplies, and authorized specified funds for telephone calls and for a legal runner.

On September 27, 1977, the sheriff's department unilaterally restricted petitioner's pro. per. privileges due to his alleged involvement in a "fracas" in the jail. On October 11, 1977, petitioner appeared before respondent court to complain of this action and to move for reinstatement of his full pro. per. privileges. Petitioner complained that he was being denied access to the law library, to telephones, and to his investigator. The judge indicated he would look into the matter and recessed the proceedings. Upon reconvening, the judge said he had spoken with a deputy sheriff about the matter. The judge then impliedly approved the previous restrictions on petitioner's privileges but ordered that petitioner be allowed to see his investigator Monday through Friday at 8:30 a.m., that petitioner be allowed access each day to the Daily Journal, to four law books in the morning and afternoon, and that petitioner be permitted to complete thirty minutes of telephone calls each day.

On November 7, 1977, petitioner appeared before respondent court on a petition for writ of habeas corpus, contesting the remaining restrictions on his pro. per. privileges and seeking a hearing on the matter. Respondent denied the petition for writ of habeas corpus but granted petitioner's oral request for an order allowing him an additional 30-minute period for telephone calls each afternoon.

On December 2, 1977, petitioner again appeared before respondent court and moved for reinstatement of his full pro. per. privileges, or in the

---

[1]We follow the terminology of *Ferrel* v. *Superior Court* (1978) 20 Cal.3d 888 [140 Cal.Rptr. 610, 576 P.2d 93]. The term "pro. per. privileges" refers to out-of-court privileges afforded an incarcerated defendant proceeding in propria persona for the purpose of facilitating preparation of a defense. The term "pro. per. status" refers to the right of a defendant electing to proceed in propria persona to appear on his own behalf and present a defense in court.

[2]The full pro. per. privileges referred to are those set forth in the Los Angeles Superior Court Policy Memorandum Re Inmate Pro. Per. Privileges, adopted by the executive committee of the superior court on January 5, 1976.

alternative, for a hearing on the matter.[3] Respondent denied the motion and the request for a statement of reasons for the ruling, indicating that the reasons were already in the record.

By this petition for writ of mandate, petitioner seeks relief from the orders restricting the pro. per. privileges initially granted him pursuant to respondent's Policy Memorandum Re Inmate Pro. Per. Privileges (hereinafter referred to as Policy Memorandum). (See fn. 2, *ante.*)

Petitioner argues that reasonable access to law books, telephones and witnesses is a concomitant of the constitutional right of self-representation (*Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525]) which may be abridged only upon a showing of compelling governmental interest and upon affording him procedural due process. The premise of petitioner's argument is that reasonable access is that which was initially provided him pursuant to respondent's Policy Memorandum. Respondent, on the other hand, asserts that the restrictions placed on petitioner's pro. per. privileges still provide him reasonable access to law books, telephones and witnesses. At the same time, however, respondent denies that a constitutional right is in issue in this case. Respondent characterizes this case as involving only the questions whether it may approve modification of the standard privileges enumerated in the Policy Memorandum and whether it must hold a full-scale adversary hearing when it does so.

We agree generally with respondent's characterization. The real question posed by petitioner's complaint appears to be whether he has any constitutionally protected interest in retention of the pro. per. privileges initially granted him pursuant to respondent's Policy Memorandum, and, if so, the circumstances in which and the procedures by which those privileges may be terminated or restricted.[4] For the reasons set forth below, we conclude that the Policy Memorandum gives petitioner a justifiable expectation, protected by due process, that the privileges initially granted him will not thereafter be restricted or terminated except for cause. We further conclude that violation of jail rules and/or a demonstrable necessity for administrative segregation of a

---

[3]An attorney who had agreed to assist petitioner in his challenge to the restriction of his pro. per. privileges appeared with petitioner on this date. This attorney is also representing petitioner in the present proceeding.

[4]Our analysis of the question posed by petitioner's complaint makes it unnecessary to address his argument about the applicability of *Bounds* v. *Smith* (1977) 430 U.S. 817 [52 L.Ed.2d 72, 97 S.Ct. 1491], to pro. per. privileges.

defendant who would otherwise constitute a threat to jail security may justify such restriction or termination. We also conclude, however, that the nature of a defendant's interest in exercising those privileges is such that except in emergency situations, they may be restricted only after notice and hearing. Restrictions that are an incidental result of disciplinary sanctions should therefore follow only after a disciplinary proceeding; nonpunitive restrictions flowing from the sheriff's determination that institutional security requires segregation or other limitation on the movement of the defendant may be imposed only after a classification hearing to establish the existence of cause for the restriction. Although a court order is affected by restriction of pro. per. privileges, we do not think that due process requires the disciplinary and classification hearings to be held in court so long as provision is made for court review of the matter and for the defendant to appear and be heard at the time of such court review on the sheriff's application for modification of the order granting pro. per. privileges.

Respondent has adopted a policy of routinely granting extensive pro. per. privileges to incarcerated defendants who choose to exercise their constitutional right of self-representation. The policy was formulated in conjunction with the Los Angeles County Sheriff's Department and represents their agreement on the matter. (See Criminal Trial Judges' Benchbook, L. A. Super. Ct. (Hayden & Keene, edits., unpub. looseleaf, 1971) Prisoners' Privileges, p. 204.) Respondent's policy is embodied in its printed Policy Memorandum, which sets forth the standard privileges to be routinely granted and the manner in which deviations therefrom are to occur. The standard privileges include use of the law library and telephones for seven hours a day on weekdays, the opportunity to interview witnesses for extended periods of time, and the use of and conferences with legal runners and investigators. Requests for privileges other than those specified are to be made to a designated department of respondent court. A provision on suspension of privileges states: "a. The Sheriff is authorized to apply to the court for an order suspending any and all court ordered inmate privileges for cause. b. Any inmate acting in propria persona may be relocated by the Sheriff whenever, in his opinion, such action is necessary for the preservation of jail security, discipline, safety, or for the protection of other inmates or jail personnel."

Respondent's Policy Memorandum is undoubtedly taken into consideration when an incarcerated defendant chooses to assert his constitutional right of self-representation before respondent. Pro. per. privileges are, of course, intimately related to the right of self-representation because of

their impact on the ability and opportunity of an incarcerated defendant to prepare a defense. Restriction of a defendant's pro. per. privileges is therefore a matter of considerable importance to the exercise of his constitutional right of self-representation.

We need not decide whether defendants generally have a constitutional right to pro. per. privileges to determine whether petitioner here has a constitutionally protected interest in retaining those heretofore established and granted to him by respondent. Even if a defendant has no constitutional right to pro. per. privileges, once they are given he may nevertheless have an interest in them which is protected by the due process clause of the Constitution. As the United States Supreme Court noted in *Montanye* v. *Haymes* (1976) 427 U.S. 236 [49 L.Ed.2d 466, 96 S.Ct. 2543], a substantial state-created right, even though not constitutionally compelled, may not be arbitrarily withheld. The court indicated there that although no interest protected by the United States Constitution is involved in transfer of a state prisoner to another prison, had there been "some right or justifiable expectation rooted in state law that he will not be transferred except for misbehavior or upon the occurrence of other specified events," due process would require the prisoner be afforded a fact finding hearing to establish cause for the transfer. (*Montanye* v. *Haymes, supra,* 427 U.S. at p. 242 [49 L.Ed.2d at p. 471]; see also *Meachum* v. *Fano* (1976) 427 U.S. 215 [49 L.Ed.2d 451, 96 S.Ct. 2532].) The court noted that the disciplinary hearing rights it had declared in *Wolff* v. *McDonnell* (1974) 418 U.S. 539 [41 L.Ed.2d 935, 94 S.Ct. 2963], protected an interest which "had its roots in state law, and the minimum procedures appropriate under the circumstances were held required by the Due Process Clause 'to insure that the state-created right is not arbitrarily abrogated.' [Citation.] This is consistent with our approach in other due process cases such as *Goss* v. *Lopez,* 419 U.S. 565 (1975); *Board of Regents* v. *Roth,* [(1972) 408 U.S. 564 (33 L.Ed.2d 548, 92 S.Ct. 2701)]; *Perry* v. *Sinderman,* 408 U.S. 593 (1972); *Goldberg* v. *Kelly,* 397 U.S. 254 (1970)." (*Meachum* v. *Fano, supra,* 427 U.S. at p. 226 [49 L.Ed.2d at p. 460].)

■ Here, although respondent's Policy Memorandum is not a state law or regulation, it is sufficiently well-established and relied upon to give petitioner and others like him a justifiable expectation that the privileges initially granted pursuant to it will not thereafter be restricted or terminated except for cause. The interest of petitioner in retention of his pro. per. privileges is substantial, intimately related to the exercise of a constitutional right, and worthy of protection under the due process

clause of the Constitution. We therefore conclude that petitioner has a justifiable expectation, conferred by respondent's Policy Memorandum and protected by due process, that the privileges initially granted him will not thereafter be restricted or terminated except for cause.[5]

We now turn to the question of what procedures are required to protect petitioner's interest. ■ " '[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.' " (*Wolff* v. *McDonnell, supra,* 418 U.S. at p. 560 [41 L.Ed.2d at p. 953].) The private interest here is a substantial one. As we have indicated, restriction of a defendant's pro. per. privileges affects his opportunity and ability to prepare a defense, a matter of considerable importance to the exercise of his constitutional right of self-representation. More than one government function appears to be involved in the restriction of pro. per. privileges. Restriction of pro. per. privileges may occur as an incidental result of a disciplinary sanction imposed for jail misconduct or for other administrative reasons involving continuing concerns of jail security. Because the record does not reveal which function was involved in the restriction of petitioner's privileges in this case, we must consider both functions in determining what procedures due process requires.

■ We first consider restriction of pro. per. privileges as an incidental result of the imposition of jail disciplinary sanctions for jail misconduct. ■ To the extent that petitioner's argument that restrictions may be imposed only upon a showing of compelling government necessity is directed to jail disciplinary sanctions, we must reject it. Pro. per. status should not give an inmate immunity from disciplinary sanctions that would normally be imposed for jail misconduct.[6] By this we mean that a pro. per. inmate should not be relieved of a disciplinary punishment solely because the punishment might interfere with the exercise of his pro. per. privileges.[7] A pro. per. inmate may be subjected

[5]Respondent asserts that no adversary hearing is required, relying on *In re Harrell* (1970) 2 Cal.3d 675 [87 Cal.Rptr. 504, 470 P.2d 640]. This reliance on *Harrell* is misplaced, for that case involved a complaint about the substance of prison rules on library use, not a limitation of rights provided by the rules.

[6]Respondent's grant of pro. per. privileges is impliedly subject to the inmate's good behavior and obeying jail rules.

[7]This is not to say that we approve restriction of pro. per. privileges as the punishment itself for misconduct which is unrelated to the exercise of such privileges. We recognize that there may be situations in which restriction of pro. per. privileges is the appropriate

to the same sanctions that are imposed on other inmates for similar misconduct.[8]

On the question of the procedures required by due process in restriction of pro. per. privileges as an incidental result of the imposition of disciplinary sanctions, we are guided by the procedures that were held required in *Wolff* v. *McDonnell, supra,* 418 U.S. 539, for prison disciplinary proceedings involving serious sanctions. We see no meaningful distinction between prison and jail disciplinary proceedings insofar as due process is concerned since the impact on the prisoner is the same. The impact of disciplinary sanctions on an inmate not yet convicted of any offense is particularly onerous since, in noncapital cases, imprisonment is solely for the purpose of assuring his presence at trial, and thus he may properly expect that his freedom will be curtailed only to the extent demanded by the necessities of jail management and security.

In *Wolff* the court considered at length the circumstances in which prison disciplinary proceedings take place and tailored the procedures required to those circumstances. *Wolff* held that a prisoner must be given (1) an opportunity to appear before the decision-making body, (2) written notice of the charge against him at least 24 hours in advance of the hearing, (3) an opportunity to present witnesses and documentary evidence if doing so will not be unduly hazardous to institutional safety,[9] (4) an impartial hearing body,[10] and (5) a written

---

and, indeed, necessary sanction. We suggest, however, that because of the importance of pro. per. privileges to the right of self-representation, the appropriate disciplinary sanction in such a situation should be selected with a view to that which is least burdensome on the exercise of the privileges and yet still permits meaningful sanction.

[8]We note that the regulations on minimum standards for local detention facilities authorize punishments including loss of privileges and up to 10 days of disciplinary isolation. (Cal. Admin. Code, tit. 15, §§ 1170-1174.) We also note however, that in another proceeding a Los Angeles Superior Court has permanently enjoined the sheriff's department from suspending pro. per. privileges merely as a concomitant of an intrajail disciplinary punishment, excepting only suspensions for a maximum of 48 hours as punishment for a serious breach of security by the affected person and when court approval for such suspension is sought no later than the first court day following such a breach of security.

[9]"Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence. Although we do not prescribe it, it would be useful for the Committee [hearing body] to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases." (*Wolff* v. *McDonnell, supra,* 418 U.S. at p. 566 [41 L.Ed.2d at p. 957].)

[10]The court in *Wolff* declined to rule that the hearing body consisting of the associate warden custody, the correctional industries superintendent, and the reception center

statement of the evidence relied on and of the reasons for the disciplinary action taken.[11] Because of the hazards to institutional interests, *Wolff* declined to hold that the right of confrontation and cross-examination was required, leaving this matter to the sound discretion of correctional officials. (See also *Baxter* v. *Palmigiano* (1976) 425 U.S. 308 [47 L.Ed.2d 810, 96 S.Ct. 1551].) Because the considerations expressed in *Wolff* appear equally applicable to jail disciplinary proceedings, we conclude that a disciplinary proceeding accompanied by the procedures set forth in *Wolff* is required before imposition of any jail disciplinary sanction which has a direct or incidental result of restricting an inmate's pro. per. privileges.

■ We now turn to the question of the procedures required for restriction of pro. per. privileges for reasons apart from the imposition of jail disciplinary sanctions. These reasons encompass considerations of administrative necessity involving continuing concerns of jail security. Such concerns are generally acted upon by determining to place an inmate in administrative segregation, which necessarily limits or eliminates his access to pro. per. facilities. Thus such a decision, like a disciplinary sanction of isolation, has a serious impact on a substantial state-given right, and we conclude that it must be accompanied by the safeguards of procedural due process in the determination of cause for the segregation of the inmate or other substantial limitation on his access to pro. per. facilities.

Although classification hearings have not been required for administrative segregation of inmates in local detention facilities, and perhaps may not be required in light of the shorter period of detention typically imposed on jail inmates, the United States Supreme Court has recently affirmed a decision which held that due process requires such hearings for prison inmates who are to be segregated from the general population. (*Wright* v. *Enomoto* (N.D.Cal. Sept. 30, 1976) U.S. Dist. Court No. C-72-1422 SAW, affd. (Feb. 21, 1978) 434 U.S. 1052 [55 L.Ed.2d 756, 98 S.Ct. 1223].) In *Wright* a three-judge court extended the *Wolff* v. *McDonnell* minimum due process protections to administrative segregation deter-

director, governed by regulations setting forth standards, was insufficiently impartial to satisfy the due process clause. (*Id.,* at pp. 570-571 [41 L.Ed.2d at p. 959].)

[11]"It may be that there will be occasions when personal or institutional safety is so implicated that the statement may properly exclude certain items of evidence, but in that event the statement should indicate the fact of the omission." (*Id.,* at p. 565 [41 L.Ed.2d at p. 956].)

minations in California prisons. As in *Wolff,* a liberty interest was involved. Here it is the inmate's substantial interest in his pro. per. privileges that is affected by segregation. Thus, although we do not decide whether jail administrative segregation determinations are in all cases subject to the *Wolff* v. *McDonnell* minimum due process protections heretofore described, we conclude that they are when restriction of an inmate's pro. per. privileges will flow from such a determination. Except in an emergency situation, the privileges may be restricted only after such notice and hearing; in emergency situations, the notice and hearing should be provided as soon as practical but in no event more than 72 hours after initial restriction of the privileges. (Cf. *Wright* v. *Enomoto, supra.*) Because of the importance of pro. per. privileges to the exercise of the constitutional right of self-representation, a decision to segregate or otherwise limit an inmate's access to pro. per. facilities should be made only upon a showing of demonstrable necessity for institutional security. Such a decision must be related to security needs and should not be punitive.[12]

■ A further question we must address is the appropriate forum for the procedures we have delineated. Petitioner asserts that they must be conducted in court since the privileges were granted by court order. We agree that the court is the appropriate body to modify its own order, but do not agree that this necessarily means that the evidentiary hearing must be conducted in court. A pro. per. inmate's due process right in determination of the existence of cause for restriction of pro. per. privileges is, in our view, afforded by a jail administrative evidentiary hearing so long as some provision is made for court review of the matter and for the defendant to appear before the court. Here, where there is no express reservation or condition in the court order granting petitioner full pro. per. privileges, the nature of the order requires that those privileges not be restricted (except in emergency situations)[13] until the court itself modifies the order.[14] Therefore, if the hearings are conducted administra-

[12]Where the determination of the need for segregation follows and is based upon conduct which was the subject of a disciplinary hearing and sanction, the hearing body determining classification need not conduct an evidentiary hearing on whether the inmate engaged in such conduct. (Cf. *Gee* v. *Brown* (1975) 14 Cal.3d 571, 575, fn. 3 [122 Cal.Rptr. 231, 536 P.2d 1017].) A hearing should, however, be conducted on whether such conduct justifies the limitation that would flow from the possible classification decisions.

[13]In an emergency situation, the court review and determination of whether to modify should take place as soon as practical but in no event more than three court days after the hearing and decision resulting in restriction.

[14]Future orders granting pro. per. privileges might be made conditional upon modification of privileges by the sheriff after a hearing on the existence of cause therefor. The fact that pro. per. privileges may be subject to limitation or suspension is a

tively, the hearing body should send its decision and report, including a summary or digest of the evidence on both sides, to the defendant and to the court for court review of the matter and determination of whether to modify the order granting pro. per. privileges.[15] The defendant should be given an opportunity to appear at the time of the court's determination. The purpose of the defendant's appearance is to allow him an opportunity to voice any objection he has regarding the administrative proceeding and decision. Moreover, whenever a determination to modify is made, the court should inquire of the defendant whether, in light of the modification, he still wants to proceed in pro. per. or now wants to have counsel appointed to represent him. (*Ferrel* v. *Superior Court, supra,* 20 Cal.3d at p. 892, fn. 5.)

Because petitioner has not been afforded due process in the restriction of his pro. per. privileges, the relief sought must be granted, and the orders of October 11, 1977; November 7, 1977; and December 2, 1977, vacated. If the sheriff believes cause presently exists to restrict petitioner's privileges, he is not precluded from seeking modification of the court's original order in accordance with the procedures set forth herein.

Let a peremptory writ of mandate issue commanding the superior court to vacate its orders of October 11, 1977; November 7, 1977; and December 2, 1977, limiting petitioner's pro. per. privileges.

Bird, C. J., Tobriner, J., Mosk, J., Clark, J., Richardson, J., and Newman, J., concurred.

---

consideration of which the defendant should be made aware at the time he elects to represent himself. (*Ferrel* v. *Superior Court, supra,* 20 Cal.3d at p. 892, fn. 5.) The importance of pro. per. privileges to the exercise of the constitutional right of self-representation, however, would still require that the court be given notice of any such modification by the sheriff and that the defendant be given notice that he may seek review of the modification by the court. Moreover, as noted in the text *infra,* whenever a determination to modify is made, the court should inquire of the defendant whether, in light of the modification, he still wants to proceed in pro. per. (*Ibid.*)

[15]Our delineation of a procedure for administrative rather than court evidentiary hearings should not be read as a limitation on the court's power to conduct the hearing itself should it so desire.