Filed 9/26/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JIMMIE L. DOSS, JR.,<br><br>        Defendant and Appellant. | A137203<br><br>(Contra Costa County<br>Super. Ct. No. 5-121454-3) |

Defendant Jimmie L. Doss, Jr. appeals from a judgment entered after a jury convicted him of assault with a deadly weapon and battery. The sole issue on appeal is whether the trial court applied an incorrect legal standard in revoking Doss's right to represent himself under *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).[1] We conclude that the trial court applied an incorrect standard, and we conditionally reverse the judgment and remand for a new hearing for the court to apply the correct standard. At the hearing, the court may consider any misconduct by Doss since its previous ruling. If the court determines that Doss is not entitled to represent himself in a new trial, the judgment shall be reinstated. If the court determines that Doss is entitled to represent himself, he shall receive a new trial.

---

[1] Doss's appointed counsel filed an opening brief that raised no issues and requested our independent review under *People v. Wende* (1979) 25 Cal.3d 436. After conducting our review, we ordered the parties to brief whether the trial court applied the correct legal standard in revoking Doss's self-representation.

1

I.
FACTUAL AND PROCEDURAL
BACKGROUND

This case centers on the distinction between a defendant's right under *Faretta*, *supra*, 422 U.S. 806 to self-representation in a criminal proceeding and an inmate's right to certain jailhouse privileges as a consequence of self-representation. In legal terms, a self-represented defendant has in propria persona (pro. per.) *status* in the proceedings. Such a defendant who is incarcerated may also be given pro. per. *privileges* to engage in certain activities, such as making telephone calls for case-related purposes, to facilitate his or her ability to participate in the proceedings. This case involves both of these concepts and the different legal standards that apply to them.

Doss has an extensive criminal history. He was originally incarcerated in the Martinez Detention Facility for charges unrelated to this case.[2] He was allowed to represent himself to defend those charges (i.e., he had pro. per. status), and he was given pro. per. privileges in jail to facilitate his self-representation.

The charges in this case were brought after Doss hit a fellow inmate on the hand with a broom handle in December 2011. He was charged with felony counts of assault with a deadly weapon and battery causing serious bodily injury.[3] He was also alleged to have personally inflicted great bodily injury in connection with both charges.[4]

Doss asked for pro. per. status in this case, and his request was initially granted. But a few months later, the Contra Costa County Sheriff's Office suspended his pro. per.

---

[2] The Attorney General informs us that Doss "was recently convicted of 21 counts, including first degree murder and other offenses," in another Contra Costa County case that involved at least some of those charges.

[3] The assault charge was brought under Penal Code section 245, subdivision (a)(1), and the battery charge was brought under Penal Code sections 242 and 243, subdivision (d). All further statutory references are to the Penal Code.

[4] The allegations of great bodily injury were made under section 12022.7, subdivision (a). Sentencing enhancements based on previous convictions were also alleged, including three strikes under sections 667 and 1170.12, three serious felonies under section 667, subdivision (a)(1), and a felony conviction resulting in a prison term under section 667.5, subdivision (b).

jail privileges on an emergency basis, and the People then moved for reconsideration of his pro. per. status.[5]

The revocation of Doss's pro. per. privileges and status was considered at two hearings in May 2012, both of which were held before the judge who had granted Doss pro. per. status in the other case but who was not the judge who had originally granted Doss's pro. per. status in this case. At the first hearing, the sheriff's office submitted a binder containing reports of 57 incidents between January 2010 and April 2012 that it contended demonstrated Doss's "destructive and violent actions" and upon which it had relied to suspend his pro. per. jail privileges. Some of the incidents in the reports were unrelated to Doss's pro. per. privileges or status. Doss routinely refused to obey officers, threatened and assaulted jail personnel and other inmates, possessed contraband, damaged thousands of dollars worth of property, and otherwise undermined jail security. A lieutenant testified that Doss had displayed an unprecedented level of "totally violent, disruptive, destructive[,] and . . . unruly" behavior and likened him to "a bull in a china shop."

Other incidents in the reports, however, were relevant to Doss's pro. per. privileges or status. When not permitted to make pro. per. calls, Doss responded on various occasions by threatening to break the jail's windows and sprinkler pipes, "us[ing] his waist restraints as a weapon and caus[ing] damage to the facility," "br[eaking] the sink off the wall in his room and us[ing] the parts to break out the window in his room," and "threaten[ing] to damage the facility . . . [and] striking the light fixture in his room with enough force that he had to be placed in a safety cell in intake in leg restraints." Doss also used his pro. per. telephone calls for improper purposes. During a call with his legal runner, who wanted to resign, Doss threatened to " 'fucking kill [him] and gas [his]

---

[5] Whether the People should have so moved is another matter. A "proceeding to consider termination of [a] defendant's *Faretta* rights . . . should not be the subject of a 'motion' by the People," because "prosecutors [should] not . . . overstep their proper role" by "advocat[ing] for a particular result" instead of merely "serv[ing] as an adjunct of the court in discharging its duty to control the orderliness and integrity of the proceedings." (*People v. Carson* (2005) 35 Cal.4th 1, 11, fn. 1 (*Carson*).)

mamma.' " Doss was also overheard claiming that "he was using the [pro. per.] calls to 'handle business' because he believe[d] the police [couldn't] use the calls against him."

In addition to the incidents described in these reports, the People presented two more reasons why Doss's pro. per. status should be revoked. First, they presented evidence that in 2010 Doss had used his pro. per. status to threaten and intimidate a female minor who was a codefendant with him in another case and whom we shall refer to as Doe. At the second hearing in May 2012, Doe's attorney testified about what Doe had reported about Doss. He said that Doe "believes that [Doss] can manipulate . . . his pro per privileges . . . to continue to conduct business on the streets, to learn where she is, and [to] direct harm to her wherever that might be." He further testified that Doe claimed that Doss had used his pro. per. status to telephone her before she was arrested. And he testified that after Doe's arrest, Doe received letters from Doss "mailed by a legal runner to her while she was in custody at Juvenile Hall." Finally, the attorney testified that Doe reported that Doss claimed he was able to "manipulate his custodians to get information that they had through access to the computers, things like court dates . . . and other things that might seem innocent to someone that didn't know his purpose, and had learned housing arrangements and court dates of hers and others."[6]

The second additional reason the People offered for the revocation of Doss's pro. per. status was that Doss had been found to have abused his pro. per. status in another case. According to the prosecutor, Doss abused his status in that case by requesting an attorney on "[t]he eve of trial," and the judge had denied the request after finding that Doss made it for the purpose of delaying the proceedings.

The judge presiding at the May 2012 hearings remarked that he had been unaware of most of the evidence presented when he granted Doss pro. per. status in the other

---

[6] In response, Doss stated that he had been ordered to stay away from Doe in December 2010, which was after these incidents had occurred. He represented that the order prohibited him from contacting Doe and that any mail from him to Doe would be intercepted. He argued that there was no evidence that he had disobeyed the order, and he pointed out that the People produced no evidence that he was in contact with Doe after the summer of 2010.

4

case.[7] He observed, "Under *Wilson* [*v. Superior Court* (1978) 21 Cal.3d 816 (*Wilson*)], . . . a defendant's pro per privileges can be revoked or restricted for jail security, discipline, safety, and protection of the inmates or personnel. Pro per status, in essence, doesn't give an inmate immunity from disciplinary sanctions." The judge then described on the record about 30 of the jail incidents included in the binder, some related to Doss's pro. per. status and some not. The judge also mentioned an instance in which, in court, Doss had "admitted to using the pro per phone to talk to family . . . on more than one occasion."

Addressing Doss, the judge then ruled as follows:

THE COURT: . . . [Y]ou've become such a security risk . . . over time, . . . [and the previous] ruling was imprudent. I should not have done it. [¶] . . . [W]hat you've done since then, you know, isn't as great as what you did before, but you look at it altogether, had I . . . known then what I know now, there's no way that I would have ever granted your pro per status. [¶] [The prosecutor] tried to tell me, but . . . her argument, for some reason, wasn't persuasive enough. But when I've seen the documentation, and I've heard the additional evidence, I'm . . . completely convinced that the . . . right thing to do is to revoke your pro per status . . . and not to punish you. [¶] You know, I'd rather . . .

THE DEFENDANT: I'm not mad.

THE COURT: . . . that you be able to represent yourself . . .

THE DEFENDANT: I'm not mad.

THE COURT: . . . but for jail security and for the protection of witnesses. [¶] I've gone through the list of things that have happened in this case, and . . . it's obvious to the court that you've used your pro per position improperly. You've used the phone improperly. You've used it to conduct business. You've used it to threaten people. [¶] The court doesn't have to wait until somebody is hurt in order to restrict your privileges. [¶] The . . . court notes that you are indeed a security risk. You've assaulted deputies,

---

[7] The prosecutor represented that when making the previous ruling, the judge had before him evidence of threats to the legal runner and Doe and of the finding in another case that Doss abused his pro. per. status.

you've possessed a shank, you had fights in jail, and you committed assault with a deadly weapon, with a broom handle while in jail.

THE DEFENDANT: And I ain't going to stop.

THE COURT: The security risks aren't . . . heightened by your pro per status. You have to be housed in jail. You have to be transported . . . . [A]nd this isn't the reason that I'm revoking your pro per status.

THE DEFENDANT: Yeah, it is.

THE COURT: I'm revoking . . . your *Faretta* rights because you . . . have abused your pro per privileges . . .

THE DEFENDANT: On what basis?

THE COURT: . . . by committing these crimes.

THE DEFENDANT: What have I abused? Can I ask for cause to be shown now? [¶] . . . [¶]

THE COURT: I'm speaking. [¶] So based on . . . all of this, and under *Wilson*[, *supra*, 21 Cal.3d 816], which says that for court security, for jail security, for discipline, and safety, and protection of inmates and . . . personnel, termination is appropriate.

The judge then ordered "the prior orders granting [Doss] *Faretta* [status to be] withdrawn" and appointed counsel for him.

This case was later assigned to another judge for trial. Doss filed a motion in limine to have his pro. per. status restored, arguing that the judge presiding at the May 2012 hearings had revoked it "without proper due process." The new judge ruled, "I'm not going to revisit [the prior judge]'s decision for the following reasons: First, it is properly his decision to make. He was the motion judge; he was, at least in one of the cases, the judge who initially granted the pro per privileges; he specifically stated on the record that had he known some of the things that had happened before that he would not have granted them. I'm not in a position to second guess that or to determine whether that was right or wrong. [¶] . . . [¶] Another fact I leave to [the prior judge] to determine [is] whether the fact[s] warranted the withdrawal of pro per privileges, but I think had I

6

been in a position as [the prior judge] was to have reviewed that issue, I would have reached the same conclusion. So, I'm not going to revisit it for all those reasons."

A jury subsequently found Doss guilty of the assault charge and accompanying great-bodily-injury enhancement. It found him not guilty of the battery charge and convicted him of the lesser included offense of simple battery, a misdemeanor.[8] The trial court sentenced him to prison for a term of 25 years to life for the assault and a term of three years for the great-bodily-injury enhancement. It also sentenced him to an additional 10 years based on prior serious felonies, for a total term of 38 years to life.[9]

## II.
### DISCUSSION

*A.      The Standard of Review.*

A ruling revoking a defendant's pro. per. status is reviewed for an abuse of discretion and " 'will not be disturbed in the absence of a strong showing of clear abuse.' " (*People v. Welch* (1999) 20 Cal.4th 701, 735.) In conducting our review, "we . . . accord due deference to the trial court's assessment of the defendant's motives and sincerity as well as the nature and context of his misconduct and its impact on the integrity of the trial in determining whether termination of *Faretta* rights [i.e., of pro. per. status] is necessary to maintain the fairness of the proceedings." (*Carson*, *supra*, 35 Cal.4th at p. 12.) A trial court abuses its discretion, however, when its ruling "rests on an error of law." (*People v. Superior Court (Humberto S.)* (2008) 43 Cal.4th 737, 746.)

---

[8] The battery conviction was under sections 242 and 243, subdivision (a).

[9] The enhancements for the prior serious felonies were imposed under section 667, subdivision (a)(1), and the term for the assault was increased based on the prior strikes. The trial court did not sentence Doss to a separate term for the battery under section 654, and it struck a finding of a prior prison term under section 667.5, subdivision (b).

### B. The Trial Court Applied an Incorrect Legal Standard in Revoking Doss's Pro. Per. Status.

Doss argues that the trial court abused its discretion by applying an incorrect legal standard and revoking his pro. per. status without considering the alternative of merely restricting his pro. per. privileges.[10] We agree.

The Sixth and Fourteenth Amendments give criminal defendants the right to represent themselves. (*Faretta*, *supra*, 422 U.S. at pp. 807, 821.) A trial court generally must grant a timely, unequivocal request for self-representation. (See *People v. Butler* (2009) 47 Cal.4th 814, 824-825 (*Butler*).) A prerequisite of self-representation, however, is that the defendant be willing and able "to abide by rules of procedure and courtroom protocol." (*McKaskle v. Wiggins* (1984) 465 U.S. 168, 173.) Revoking a defendant's pro. per. status is justified when the defendant has " 'deliberately engage[d] in serious and obstructionist misconduct,' " occurring either inside or outside the courtroom (*Butler*, at p. 825, quoting *Faretta*, *supra*, 422 U.S. at p. 834, fn. 46), that "seriously threatens the core integrity of the trial." (*Carson*, *supra*, 35 Cal.4th at pp. 7, 11.)

In *Carson*, *supra*, 35 Cal.4th 1, our state Supreme Court set forth the analysis a trial court should use in determining whether revoking a defendant's pro. per. status after it has been granted is warranted based on "obstructive behavior [that] seriously threatens the core integrity of the trial." (*Id.* at pp. 10-11.) In addition to considering "the nature of the misconduct and its impact on the trial proceedings," the court should consider "the availability and suitability of alternative sanctions" because "[m]isconduct that is more removed from the trial proceedings, more subject to rectification or correction, or otherwise less likely to affect the fairness of the trial may not justify complete withdrawal of the defendant's right of self-representation." (*Id.* at p. 10.) The court should also consider "whether the defendant has been warned that particular misconduct will result in termination of [pro. per.] status." (*Ibid.*) "[W]hether the defendant has 'intentionally

---

[10] Doss also claims that he was denied due process when his pro. per. status was revoked because the trial court relied on inadmissible hearsay. We need not address this argument in light of our conclusion that the court applied the wrong legal standard.

sought to disrupt and delay his trial' " is also a relevant consideration but, ultimately, the key consideration is "the effect of the misconduct on the trial proceedings, not the defendant's purpose." (*Id.* at pp. 10-11.)

A defendant's right to self-representation under *Faretta*, *supra*, 422 U.S. 806 is atypical in that, unlike many other rights, its violation cannot be excused even if the defendant suffered no prejudice. In *McKaskle v. Wiggins*, *supra*, 465 U.S. 168, the United States Supreme Court observed that the denial of the right to self-representation "is not amenable to 'harmless error' analysis" because the right is one "that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant." (*Id.* at p. 177, fn. 8; see also *People v. Joseph* (1983) 34 Cal.3d 936, 946 [holding that *Faretta* error is reversible per se because "[a]ny rule which purported to assess the quality of a would-be *Faretta* accused's representation by the harmless error standard would inevitably erode the *pro se* right itself" and "would require an impossibly speculative comparison between the accused's undisclosed *pro se* strategy and that of counsel"].)

Applying these legal standards, we conclude that in revoking Doss's pro. per. status the trial court failed to apply the correct legal standard, which is that set forth in *Carson*, *supra*, 35 Cal.4th 1. The court's reliance on *Wilson*, *supra*, 21 Cal.3d 816 was misplaced because that case only involved the restriction of pro. per. *privileges*. In *Wilson*, the defendant sought a writ of mandate after the trial court limited his pro. per. privileges. (*Id.* at pp. 819-820.) In holding that the defendant was denied due process when his pro. per. privileges were restricted, our state Supreme Court "conclude[d] that violation of jail rules and/or a demonstrable necessity for administrative segregation of a defendant who would otherwise constitute a threat to jail security" might justify "restriction or termination" of pro. per. privileges, reasoning that "a pro. per. inmate should not be relieved of a disciplinary punishment solely because the punishment might interfere with the exercise of his pro. per. privileges." (*Id.* at pp. 821-822, 824.)

In contrast, even where a defendant is "an obvious security risk and safety precautions [are] justified both in the jail and the courtroom," such considerations do not

9

necessarily justify revoking pro. per. status entirely as opposed to merely restricting pro. per. privileges.[11] (*Butler*, *supra*, 47 Cal.4th at p. 826.) If a defendant's out-of-court misconduct is unrelated to pro. per. status or privileges, the misconduct may not justify revoking pro. per. status because the appointment of counsel does not lessen the risks inherent in the defendant's need to "be housed in . . . jail, transported to and from court, and in attendance for his trial." (*Ibid.*) *Butler* declined to decide whether out-of-court misconduct unrelated to a defendant's pro. per. status can ever justify revoking that status because the trial court in that case "ultimately . . . did not rely on that ground." (*Ibid.*) Similarly, we need not decide here whether Doss's out-of-court misconduct unrelated to his pro. per. status could have justified revoking that status because the trial court did not rely on that ground. Although the court repeatedly referred to security concerns, including the safety of jail personnel and other inmates, in revoking Doss's status, it recognized that "[t]he security risks [weren't] . . . heightened by [Doss's] pro per status" and specifically stated that those risks were *not* the reason for revoking his pro. per. status.

Instead, the trial court ultimately relied on the finding that Doss had "abused [his] pro per privileges." The Attorney General argues this was an "amply supported ground[]" for revoking Doss's pro. per. status, pointing to Doss's intimidation of Doe, use of pro. per. calls for improper purposes, and violent response to not being permitted pro. per. calls, as well as to the finding in another case that Doss had abused his privileges to attempt to delay trial. We agree that at least some of this conduct may have justified a revocation of pro. per. status. (See, e.g., *Carson*, *supra*, 35 Cal.4th at pp. 9-10 [witness intimidation is "[o]ne form of serious and obstructionist misconduct" that may justify revocation].) But the court evaluated Doss's misconduct under *Wilson*, *supra*,

---

[11] The appropriateness of restricting pro. per. privileges does not itself justify revocation of pro. per. status. "Restrictions on pro. per. privileges in custody . . . have never been deemed a justification for depriving inmates of the right to represent themselves," because "while self-represented inmates may not be deprived of all means of preparing a defense, the Constitution does not require *personal* access to legal resources." (*Butler*, *supra*, 47 Cal.4th at p. 827, italics in original.)

10

21 Cal.3d 816, which allows pro. per. privileges to be revoked based on out-of-court misconduct *without regard to the misconduct's effect on the court proceedings*. As a result, the court never determined that Doss's behavior constituted " 'serious and obstructionist misconduct' " (*Butler*, *supra*, 47 Cal.4th at p. 825) that "seriously threaten[ed] the core integrity of the trial," and we cannot defer to its exercise of discretion under the wrong legal standard.[12] (*Carson*, *supra*, 35 Cal.4th at p. 11.)

We are also unable to affirm the ruling because the trial court failed to adequately consider "the availability and suitability of alternative sanctions." (*Carson*, *supra*, 35 Cal.4th at p. 10.) The Attorney General argues that the court satisfied *Carson* by "considering merely revoking [Doss]'s pro. per. privileges, while maintaining his pro. per. status." (Italics omitted.) Even if we inferred from the court's references to privileges that the court considered their wholesale revocation as an alternative, this did not discharge *Carson*'s requirement. Almost all the out-of-court misconduct related to Doss's pro. per. status involved his pro. per. telephone privileges, but the court never considered the possibility of revoking or limiting only those privileges. Indeed, even if the only issue before the court had been whether to revoke Doss's pro. per. privileges instead of his status, it would still have been required to choose "the appropriate disciplinary sanction . . . with a view to that which is least burdensome on the exercise of the privileges and yet still permits meaningful sanction." (*Wilson*, *supra*, 21 Cal.3d at p. 825, fn. 8.) There is no indication in the record that the court sufficiently considered whether more limited sanctions would effectively address Doss's out-of-court misconduct.

---

[12] For similar reasons, we cannot accept the Attorney General's argument that "the trial court's personal observation of [Doss]'s disruptive behavior in its court" justified revocation. First, the trial court did not rely on this ground in ruling. Second, we cannot presume it found any such behavior to meet the applicable *Carson, supra*, 35 Cal.4th 1 standard for revoking pro. per. status since it used the inapplicable *Wilson*, *supra*, 21 Cal.3d 816 standard.

11

C.      *Doss Is Not Necessarily Entitled to a New Trial.*

Having concluded that Doss's pro. per. status was improperly revoked, we turn to consider the proper disposition of this appeal. In doing so, we recognize, as we discussed earlier, that the trial court's improper revocation of pro. per. status is reversible per se. (See *McKaskle v. Wiggins*, *supra*, 465 U.S. at p. 177, fn. 8; *Butler*, *supra*, 47 Cal.4th at pp. 824-825.)

But just because we must reverse without regard to prejudice does not mean Doss is necessarily entitled to a new trial. It is distinctly possible that Doss's pro. per. status was and is revocable under the proper legal standard. In an analogous situation, the *Carson* court concluded that the record before it was insufficient to permit it to determine whether revocation of the defendant's pro. per. status had been justified. (*Carson*, *supra*, 35 Cal.4th at p. 13.) It then reversed the judgment and remanded "for a hearing in accordance with [the] opinion," directing the judgment to be reinstated if the trial court concluded that the "defendant's *Faretta* rights were properly terminated" and a new trial to be ordered "[i]f the trial court determine[d the] defendant's self-representation should not have been terminated." (*Id.* at p. 14.) We likewise conclude that remand is appropriate to permit the trial court to determine in the first instance whether Doss's conduct meets *Carson*'s standard for revocation.

We also conclude that the trial court is not limited to considering only evidence that existed at the time it originally revoked Doss's pro. per. status. The record reveals incidents that happened after the court's ruling that might also justify disallowing Doss to represent himself, including an extremely troubling instance in which he threatened to kill a witness before that witness testified at trial in this case. Although we conclude that *we*, as a reviewing court, may not rely on postruling conduct to affirm the trial court's improper revocation of Doss's pro. per. status,[13] nothing in our decision should be construed to preclude the trial court from considering such conduct on remand. The

---

[13] On our request, the parties submitted supplemental briefing on a question we presented about Doss's postruling conduct. The Attorney General effectively, and we believe properly, discouraged us from relying on that conduct to affirm the trial court's ruling.

12

ultimate question that *it* must answer is whether Doss's self-representation would threaten the core integrity of a new trial, not whether his pro. per. status was properly revoked over two years ago.[14] If the court finds that Doss is not entitled to represent himself now, it would be pointless for it to order a new trial at which he would be represented by counsel as he was in his last trial.

## III.
### DISPOSITION

The judgment is reversed. The matter is remanded to the trial court for a hearing to determine whether Doss should be permitted to represent himself in a new trial and, if so, to what extent his pro. per. privileges should be restricted. If the court determines that Doss is not entitled to represent himself, the judgment should be reinstated. If the court determines that Doss is entitled to represent himself, he may do so in a new trial. (*Carson*, *supra*, 35 Cal.4th at p. 14.)

---

[14] We caution that Doss's mere expressions of frustration about the erroneous revocation of his pro. per. status cannot justify a renewed denial of his right to represent himself. (See *Moon v. Superior Court* (2005) 134 Cal.App.4th 1521, 1530-1531 ["We can hardly deny a party a constitutional right and then hold it against him that such denial prompted outrage and frustration"].)

_____
Humes, J.<sup>*</sup>


We concur:


_____
Reardon, Acting P.J.


_____
Rivera, J.


*People v. Doss* (A137203)

_____

\*  Presiding Justice of the Court of Appeal, First Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

| | |
|---|---|
| Trial Court: | Contra Costa County Superior Court |
| Trial Judge: | Honorable Nancy Stark<br>Honorable John Laettner<br>Honorable Leslie Landau |
| Counsel for Appellant: | Candace Hale, under appointment by the First District Appellate Project |
| Counsel for Respondent: | Kamala D. Harris, Attorney General, Gerald A. Engler, Senior Assistant Attorney General, Catherine A. Rivlin, Supervising Deputy Attorney General, David H. Rose, Deputy Attorney General |