Filed 4/5/16  P. v. Valdivia CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B262115 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA061286) |
| v. | |
| ANTHONY E. VALDIVIA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daviann L. Mitchell, Judge.  Affirmed.

George W. Taylor, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle and Timothy M. Weiner, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

## SUMMARY

Anthony E. Valdivia appeals from a judgment following a no contest plea and issuance of a certificate of probable cause, contending that the trial court abused its discretion by terminating his right to self-representation.

We affirm.

## BACKGROUND

In December 2013, an information in case No. MA061286 charged Valdivia with one count of possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1)) and alleged that Valdivia suffered three prior felonies pursuant to Penal Code section 667.5, subdivision (b).  In February 2014, a separate information filed in case No. MA061442 charged appellant in count 1 with kidnapping (Pen. Code, § 207, subd. (a)); in count 2 with assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)); in count 3 with kidnapping (Pen. Code, § 207, subd. (a)); in count 4 with torture (Pen. Code, § 206); and in count 5 with assault by means likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)).  The information alleged that counts 1, 2, and 3 were serious felonies within the meaning of Penal Code section 1192.7, subdivision (c) and Valdivia suffered from a prior felony within the meaning of Penal Code section 667.5, subdivision (b).

On April 23, 2014, Valdivia requested to proceed in pro. per. in both cases and filed a *Faretta* waiver.  During the hearing, the court stated that "pro per is not an automatic right."  The court then briefly noted Valdivia's prior incarceration disciplinary history for stealing food in 2006 and fighting in 2012 and stated, "Out-of-court misconduct . . . is also a basis for revoking your pro per privileges."  The court also explained to Valdivia, "So you understand that with this kind of history, the slightest misconduct, whether it is coming to court, whether it is not conforming your behavior while in court can be a basis for revoking your pro per privileges."  The court warned Valdivia that "if pro per privileges are granted, you are going to be given a copy of the sheriff's pro per policy memorandum.  You are going to be expected to abide by that, and failure to do so can also be a basis for revoking your privileges."  Later, the trial court

2

again "admonished that any in-court misconduct [or] any nonconformance with any of the pro per rules and regulations could be a basis for violating [*sic*] his pro per privileges." The court granted appellant's request for pro. per. status and appointed stand by counsel, stating, "In the event that your pro per privileges are ever revoked, he will be ordered to step in and take over."

In May 2014, the court appointed Valdivia a private investigator, Martin Henricks, to assist him.

At a July 21, 2014 hearing, the court indicated that it had received notice that an administrative *Wilson*[1] hearing had been held the prior business day, July 18, 2014. Valdivia stated that he planned to contest the findings of the *Wilson* board and planned to retain private counsel. The court continued the hearing because it had not yet received the administrative decision and digest of evidence.

## I.     *Wilson* Hearing

The administrative record received by the court showed the following:

While in custody at Men's Central Jail on July 9, 2014, appellant received "legal mail" from Henricks, his court-appointed investigator. Per jail policy, "All mail must be screened for contraband, drugs, inappropriate pictures, and none [*sic*] legal materials." Custodial assistant Hinton opened the envelope in Valdivia's presence and saw that it contained 60 to 70 pages of what appeared to be a printout of Valdivia's Facebook account, including "photos of [Valdivia] with large stacks of cash money and displaying possible gang sign with his hands," and "inappropriate sexual pictures, with sexual comments, and graphic nude pictures." The mail included a cover letter from Henricks with the word, "Evidence" in bold capital letters, along with other written indications that the mail contained evidence in appellant's pending cases. When custodial assistant Hinton asked Valdivia about the mail, Valdivia claimed it was legal mail and evidence in

---

[1] In *Wilson v. Superior Court* (1978) 21 Cal.3d 816, the Supreme Court held that the sheriff's department is required, absent emergency circumstances, to provide notice and a hearing before restricting or revoking a defendant's pro. per. privileges in jail. (*Id.* at pp. 821-822.)

his case. Custodial assistant Hinton treated the mail as contraband and took it to be sent back.

The next day, July 10, 2014, the watch deputy at Men's Central Jail received a call from someone claiming to be Valdivia's wife who said that Valdivia's rights were being violated, at which point Valdivia started speaking concerning his legal mail and the watch deputy realized that Valdivia was also on the call using three-way calling. All three-way calling is against jail house rules as it is used by inmates to circumvent the jail telephone system.

The *Wilson* hearing was conducted on July 18, 2014, in the presence of Valdivia, custodial assistant Hinton, who was presenting the sheriff's department's case, and Lieutenant Trejo, who served as the hearing officer. At the start of the hearing, Valdivia was asked if he had received notice of the hearing and Valdivia denied receiving notice, saying deputies could search his cell but would not find the notice. Lieutenant Trejo ordered the hearing stopped so that Deputy Montez, who had delivered the notice, could be present. According to Deputy Montez, the day prior, July 17, 2014, custodial assistant Hinton gave him an envelope for Valdivia, telling him it was about Valdivia's *Wilson* hearing and instructing him to deliver the envelope to Valdivia. Deputy Montez handed Valdivia the envelope and told him it was for his *Wilson* hearing. Around an hour later, Valdivia handed the envelope back to Deputy Montez, stating he did not need it. At the hearing, however, Valdivia continued to deny receiving the notice, stating that "nobody gave me anything" and telling the deputies to "search my cell[,] I never got it" and that they would not find it. After Valdivia was asked multiple times if he was sure he did not receive an envelope from Deputy Montez, Lieutenant Trejo stated that he would look at surveillance video from the jail cameras to determine if Valdivia was telling the truth. Valdivia then admitted he was lying and that Deputy Montez had given him the envelope. The sheriff's narrative of the *Wilson* hearing stated that appellant's false allegations delayed the operational procedure of the hearing.

Valdivia did not present any witnesses, but asserted his innocence.

After the hearing, Lieutenant Trejo concluded that appellant had violated the jail's rules and pro. per. policy, and accordingly, revoked appellant's in-custody pro. per. privileges. Appellant was notified of this decision on July 18, 2014.

## II. Court Hearing

At the July 23, 2014 court hearing to review the *Wilson* hearing, Valdivia indicated that he had not yet retained counsel and proceeded in pro. per. The trial court stated that it had received and reviewed the administrative record of Valdivia's *Wilson* hearing.

Valdivia argued that jail staff violated his rights by reading his mail when they could only inspect his mail and when he tried to contact the watch commander to complain, staff was uncooperative which was the reason it was necessary for him to initiate a three-way call in order to lodge his complaint with the watch commander.

The trial court summarized its review of the administrative record and various documents. The trial court specifically noted that it was "aware that the [*Wilson*] hearing was initially to be conducted at twelve o'clock on the date in question; however, it had to be moved up to approximately 17:55 p.m." when Valdivia "made a false claim that he did not receive the notice thus necessitating some delay" for the hearing officer, Lieutenant Trejo, to call a deputy to confirm that he had in fact served Valdivia. After the deputy was summoned, the court noted that Valdivia continued to repeatedly claim he did not receive notice and further alleged that the deputy lied about delivering the notice, and the court noted that it was not until Lieutenant Trejo stated he would examine video footage that Valdivia admitted he had received the notice and had been lying about not receiving it from the deputy.

After reviewing the mail and three-way calling offenses giving rise to the *Wilson* hearing, the trial court stated that Valdivia subsequently "obstructed and violated the procedures of conducting the actual *Wilson* hearing by misrepresenting the fact of notice and service in order to obstruct that proceeding or generate error in the proceeding."

The court then found that the *Wilson* hearing was appropriately conducted, noting the procedures that had been followed in the hearing as well as rejecting Valdivia's

5

contention that his legal mail was improperly read given that it would have been unnecessary to read Valdivia's mail to determine during a screening that the mail was contraband given the sexually graphic photographs in the mail. Thus, the court therefore upheld the sheriff's department's revocation of his in-custody pro. per. privileges at the jail.

The trial court then turned to the issue of whether Valdivia's pro. per. status in the court should be revoked. After quoting from *Ferrel v. Superior Court* (1978) 20 Cal.3d 888, which states that "[l]imitations on or suspension of a defendant's pro. per. privileges . . . would not . . . preclude a defendant from making an intelligent and voluntary decision to continue to represent himself provided that he has been warned of the dangers and difficulties that such a choice might entail" (*id.* at p. 892), the court confirmed that Valdivia wished to maintain his pro. per. status despite the dangers and difficulties of proceeding without pro. per. privileges in the county jail.

The trial court noted that when Valdivia was granted pro. per. status he was admonished in light of his history of disciplinary violations that misconduct might lead to revocation and his *Faretta* waiver states that he understood that he "must not abuse the dignity of the court" and that engaging in "serious misconduct" or obstructing the conduct of the trial court might terminate his self-representation. The court then stated that case law "support[ed] revocation of pro per status [for] out-of-court disruptions or noncompliance with rules where they support a high likelihood of in-court disruptions," citing *People v. Carson* (2005) 35 Cal.4th 1. Based on the totality of the circumstances and the severity and nature of the "misrepresentation during an actual proceeding that was held," the court concluded that no viable alternative to revocation existed. The court found that "with recent incidents of disruption and noncompliance with the rules and policies and the court looking at the overall totality of the circumstances, this all indicates that Mr. Valdivia will continue to refuse to be compliant with either the court or sheriff's directives or pro. per. policy and will continue to be obstructive or noncompliant with

6

court rules or policies" and accordingly revoked Valdivia's pro. per. status, appointing standby counsel to serve as appellant's trial attorney.[2]

## III.   Plea and Sentence

On January 5, 2015, Valdivia withdrew his plea of not guilty and pleaded no contest to count 1 of case No. MA061286 (possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1)) and, after the information was amended in case No. MA061442 to include count 6 alleging assault by means likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)), withdrew his plea of not guilty on count 5 (assault by means likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)) and pleaded no contest to counts 5 and 6 of case No. MA061442.  Counts 1, 2, 3, and 4 were dismissed.

Valdivia was sentenced in case No. MA061286 to the upper term of three years in state prison plus an additional three years pursuant to Penal Code section 667.5, subdivision (b), for a total of six years.  He was also ordered to pay the various fees and fines and awarded custody credit.  In case No. MA061442, Valdivia was sentenced on count 5 to one-third of the middleterm, one year in state prison, to be served consecutive to the sentence imposed in case No. MA061286.  For count 6, he was sentenced to one-third of the middleterm, which is one year in state prison, to be served consecutive to the sentence imposed in count 5.  Valdivia was ordered to pay various fees and fines and was given custody credits for this case.

On January 26, 2015, appellant filed a timely notice of appeal for both case Nos. MA061286 and MA061442.  On February 2, 2015, appellant's request for a certificate of probable cause was granted.

---

[2] The court also noted that Henricks's appointment would be suspended not only because Valdivia was no longer representing himself but also because Henricks might be the subject of an "investigation and action as a result of the sending of the illegal materials cited as evidence," and the court further ordered the matter reported to the membership committee for private investigators appointed by the court.

7

Valdivia contends on appeal that the trial court abused its discretion when it terminated his right of self-representation based on his out-of-court misconduct.  We affirm.

## I.        Standard of Review

A trial court's decision to terminate a defendant's right to self-representation is reviewed for abuse of discretion.  (*People v. Carson*, *supra*, 35 Cal.4th at p. 12.)  "The trial court possesses much discretion when it comes to terminating a defendant's right to self-representation and the exercise of that discretion 'will not be disturbed in the absence of a strong showing of clear abuse.'"  (*People v. Welch* (1999) 20 Cal.4th 701, 735.)  A reviewing court applies this standard even in the context of reviewing a defendant's out-of-court misconduct.  "While out-of-court acts will not necessarily require 'a "judgment call" under combat conditions' [citation], we nevertheless accord due deference to the trial court's assessment of the defendant's motives and sincerity as well as the nature and context of his misconduct and its impact on the integrity of the trial in determining whether termination of *Faretta* rights is necessary to maintain the fairness of the proceedings."  (*Carson*, *supra*, 35 Cal.4th at p. 12.)

## II.      Applicable Law

Under *Faretta v. California* (1975) 422 U.S. 806, a defendant has a constitutional right to self-representation in a criminal proceeding.  However, the "right of self-representation is not a license to abuse the dignity of the courtroom.  Neither is it a license not to comply with relevant rules of procedure and substantive law."  (*Faretta v. California*, *supra*, 422 U.S. at p. 834, fn. 46; see *Carson*, *supra*, 35 Cal.4th at pp. 8, 9 [quoting *Farretta*].)  In *Carson*, *supra*, 35 Cal.4th at page 6, our Supreme Court held a trial court may terminate a defendant's right of self-representation "for misconduct that seriously threatens the core integrity of the trial," including out-of-court misconduct.  (See *People v. Doss* (2014) 230 Cal.App.4th 46, 55.)

"Although the trial is the central event in a criminal prosecution, it represents the culmination of many weeks or months of preparation and related proceedings, such as

discovery matters and in limine rulings. Not all these pretrial activities will take place in court. Concomitantly, opportunities to abuse the right of self-representation and engage in obstructionist conduct are not restricted to the courtroom." (*Carson*, *supra*, 35 Cal.4th at p. 9.) "Whenever 'deliberately dilatory or obstructive behavior' threatens to subvert 'the core concept of a trial' [citation] or to compromise the court's ability to conduct a fair trial [citation], the defendant's *Faretta* rights are subject to forfeiture." (*Id.* at p. 10.)

In determining whether it is necessary and appropriate to terminate a defendant's self-representation, the trial court should consider "the nature of the misconduct and its impact on the trial proceedings," "the availability and suitability of alternative sanctions," "whether the defendant has been warned that particular misconduct will result in termination of in propria status," and "whether the defendant has 'intentionally sought to disrupt and delay his trial.'" (*Carson*, *supra*, 35 Cal.4th at p. 10.) "Not every obstructive act will be so flagrant and inconsistent with the integrity and fairness of the trial that immediate termination is appropriate. By the same token, however, the defendant's acts need not result in a disruption of the trial . . . . The likely, not the actual, effect of the misconduct should be the primary consideration." (*Id.* at p. 10.)

III.    **Analysis**

According due deference to the trial court's "assessment of the defendant's motives and sincerity as well as the nature and context of his misconduct and its impact on the integrity of the trial" (*Carson*, *supra*, 35 Cal.4th at p. 12), Valdivia has not demonstrated a strong showing of abuse. (*Welch*, *supra*, 20 Cal.4th at p. 735.) First, Valdivia characterizes the trial court's decision to revoke his pro. per. status as relying on two violations of the jail's pro. per. policy, prohibited mail and three-way calling, arguing that the court failed to explain how either his receipt of sexually explicit pictures attempting to make a three-way call would support the conclusion that Valdivia would be non-compliant with court directives or attempts to delay or disrupt his trial. The trial court, however, while considering the two violations, in fact focused at length on Valdivia's conduct at the *Wilson* hearing.

Next, Valdivia argues that nexus between his false allegations that he did not receive notice of the *Wilson* hearing and his trial process was limited to the fact that his in-custody pro. per. privileges were terminated, thus limiting his ability to represent himself at trial, and the only delay caused was to the *Wilson* hearing itself, not his trial. While Valdivia is correct that his misconduct at the *Wilson* hearing did not result in a delay of the trial proceedings, defendant's misconduct need not "result in a disruption of the trial" before the court can revoke pro. per. status. (*Carson*, *supra*, 35 Cal.4th at p. 10 [the primary consideration is the likely, not the actual, effect of the misconduct].)

In short, none of Valdivia's arguments, as discussed above, demonstrate that the trial court abused its discretion. Here, Valdivia falsely claimed that he did not receive notice of the *Wilson* hearing, requiring the hearing officer to summon the deputy who delivered the notice; falsely accused the deputy of lying about delivering the notice and repeatedly claimed he did not receive the notice; and did not admit receiving the notice until the hearing officer stated that he would delay the proceedings to review video surveillance footage of the jail. The trial court reasonably believed that Valdivia was attempting to "obstruct or generate error" into the *Wilson* proceedings and concluded that Valdivia's behavior indicated that he would obstruct or be noncompliant in trial proceedings. Deferring to the trial court's assessment of Valdivia's motives and sincerity, it was not an abuse of discretion for the trial court to conclude that Valdivia would engage in similar behavior in trial proceedings in the hopes of generating error or obstruction of the proceedings.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


                                        CHANEY, J.

We concur:


        ROTHSCHILD, P. J.                LUI, J.


10