Filed 1/5/16  P. v. Turner CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>STEVEN DEON TURNER,<br><br>Defendant and Appellant. | B259916<br><br>(Los Angeles County<br>Super. Ct. No. TA132992) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Paul A. Bacigalupo, Judge.  Affirmed.

Jerome McGuire, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Taylor Nguyen and Jonathan M. Krauss, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Defendant Steven Deon Turner (also known as Steven Deon Turner, Jr.) challenges his convictions for shooting at an occupied motor vehicle, possession of a firearm by a felon, possession of ammunition, and resisting a peace officer. A deputy sheriff observed defendant's crimes. Defendant represented himself, and his only defense was mistaken identity. On appeal, defendant demonstrates no prejudicial error, and we affirm.

## FACTS

On April 20, 2014, during Deputy Sheriff John Hunziker's routine patrol, he heard gunshots. Then he observed defendant shooting into a blue vehicle. When Hunziker observed him, defendant was standing in front of a gold Honda Accord "shooting into another blue vehicle . . . ." Hunziker activated his siren. Defendant returned to the passenger seat of the Honda from which he had exited, and his driver sped away, eventually hitting a curb. Once the vehicle stopped, defendant fled on foot. After observing defendant throw a silver revolver to the ground, Hunziker pursued defendant.

Almadeo Sanchez Ayala also observed the shooting. Ayala was washing his car when a car stopped, and the driver or passenger asked Ayala for directions. Shortly afterwards defendant's vehicle approached, and Ayala saw the passenger (defendant) shooting at the occupants in the blue car. Ayala heard about seven shots. Ayala was not able to identify defendant at trial.

Deputy Sheriff Edgar Bonilla assisted Hunziker in arresting defendant. Bonilla observed defendant running away from Hunziker. Defendant ran into an apartment, and when he exited it, Bonilla apprehended him. Bonilla tested defendant's hands for gunshot residue. Test results showed 13 particles consistent with gunshot residue. The gunshot residue indicated defendant had fired a gun, handled a gun, or was next to someone who had fired a gun.

Shortly after he pursued defendant, Hunziker returned to the location where defendant had thrown the revolver and retrieved it. One bullet remained in the gun.

2

Five casings were found at the scene of the shooting. No fingerprints were found on the gun.

## PROCEDURE

Defendant was charged with shooting at an occupied motor vehicle, possession of a firearm by a felon, possession of ammunition and resisting a peace officer. It was alleged that defendant had been convicted of six prior felonies including one serious or violent felony. It was further alleged that defendant served five prior prison terms.

Defendant represented himself and was tried by jury.

Just before trial, defendant argued that the charges should be dismissed because the prosecutor did not timely provide discovery. He also argued that the court should exclude the belatedly provided evidence. That evidence included photographs of the crime scene, which the prosecutor gave defendant on the date of trial. The photographs depicted defendant's gun on the street and the car in which defendant was a passenger. At the same time the prosecutor gave defendant the results of the gunshot residue test, a disc of an interview of defendant (which had not been transcribed because the prosecutor did not intend to use it), and a report stating that no fingerprints had been found on the gun.[1] Defendant also informed the court that he just received the prosecutor's witness list. The court afforded defendant numerous opportunities to identify prejudice from the late discovery as the following colloquy illustrates:

"THE COURT: . . . I'm trying to determine what prejudice you have sustained or may suffer as a result of it.

"DEFENDANT TURNER: First of all, these are not the full photos of the scene, Your Honor, where the crime took place.

"THE COURT: I'm just asking you, what she has turned over to you, what prejudice do you have to these photos?

"DEFENDANT TURNER: The due process, first and foremost.

---

[1] The test of the gun for fingerprints was being conducted at defendant's request, and the prosecutor did not have the results when defendant initially requested them.

"THE COURT:  No.  What prejudice?

"DEFENDANT TURNER:  Prejudice, I can't use these.  These are not the whole scenes.  This is part of the street.  This is not the full street where it took place.

"THE COURT:  Sir, these are photos that the people intend to use.  What prejudice do you have if they present these photos?

"DEFENDANT TURNER:  Objection.  The prejudice I have is a violation of [Penal Code section] 1054.7.

"THE COURT:  No, sir.  Besides that, what actual prejudice?

"DEFENDANT TURNER:  Well, besides where—I can refer to as far as *Brady versus Maryland* in a time constraint, constitutional rights—

"THE COURT:  I understand your claim in timeliness.  I'm asking what actual prejudice do you suffer if the people present these photographs?

"DEFENDANT TURNER:  What actual prejudice do I suffer?  Let me get that for you.  [¶]  The actual prejudice that I will suffer, Your Honor, with respect to the court and the law, I would like to verbally invite this court to dismiss this case under [Penal Code section] 1385, section (a), for the prejudice, right, the prosecution delayed.  Blatant admission is not having none of the evidence I requested with due diligence and a violation of my constitutional right to a speedy trial, Your Honor.  So that's the actual prejudice that I have with the D.A. using any of this evidence or these photos."

With respect to the gunshot residue, the defendant stated that he did not have time to prepare for trial, but did not identify any preparation he would need.  Nor did he request a continuance.  With respect to the interview of him, defendant stated that "[a]gain, Your Honor, all of it falls under [Penal Code section] 1385, [subdivision] (a), in the furtherance of justice that the—the blatant—the blatant—the blatant delay, Your Honor, is showing that the D.A. had knowledge of this information and withheld it, which makes it a *Brady versus Maryland* violation as well."

4

The court reiterated that it "need[ed]" defendant "to lay out a factual basis" "upon which you claim there may be any prejudice." Defendant stated, "the only thing I have" is the "actual law."

The court asked again: "Please set forth factually any actual prejudice that you're claiming with respect to the discovery item that you claim was provided to you in an untimely fashion." When defendant failed to identify any prejudice, the court found "no claim for actual prejudice." Although the colloquy continued after the court's ruling, defendant never identified any prejudice; nor did he request a continuance.

Prior to voir dire, the trial court instructed defendant to remain seated during the proceedings, and defendant objected, requesting the opportunity to stand. The court denied defendant's request, and later explained that it was concerned that defendant had been charged with carrying a concealed weapon while incarcerated and believed that defendant needed to remain seated for courtroom security. The court assured defendant he would be able to display exhibits. (On appeal defendant acknowledges that he received a prison sentence of two years for possession of a weapon by an inmate.)

During trial, defendant stipulated that he had been convicted of a felony within the last 10 years.

Defendant did not testify and presented no evidence in his defense.

At a discussion on instructions, defendant explained that his theory of the case was that he was not present at the scene of the shooting. He described this case as an identification case and claimed to have been falsely identified. Consistent with that defense, defendant argued to jurors that Hunziker lied and falsely identified him.

Defendant was convicted as charged, and the court found the prior conviction allegations to be true including the prior prison term allegations. Defendant then requested an attorney, and the trial court granted his request. Defendant later requested to return to pro. per. status with the assistance of an investigator, and the

5

court granted his requests. After continuing sentencing numerous times, the court ultimately sentenced defendant to a total prison term of 20 years eight months.

## DISCUSSION

Defendant argues: (1) the trial court's requirement that he remain seated throughout trial prejudiced him; (2) he was denied due process because the prosecution did not timely provide discovery; (3) he suffered prejudice when jurors spoke to a prosecution witness in the hallway; (4) the trial court should have instructed jurors on the lesser included offense of grossly negligent discharge of a firearm; (5) defendant should have been granted an additional posttrial continuance; and (6) pursuant to Penal Code section 654 the court erred in imposing sentence on both shooting at an occupied vehicle and being a felon in possession of a firearm. We discuss defendant's arguments seriatim.

### 1. *Requiring Defendant Remain Seated Does Not Require the Reversal of His Conviction*

Defendant first argues that he was prejudiced by the court's order that he remain seated throughout the proceedings. Defendant argues that the following colloquy demonstrates prejudice:

"PROSPECTIVE JUROR NO. 11: Why is it he cannot get up? Is it physical or—

"THE COURT: You're not to speculate as to why on that situation."

The court then instructed defendant to ask his questions regarding an exhibit that the prosecutor had displayed to jurors. Defendant stated that he had difficulty seeing the exhibit while it was being shown to jurors. Defendant eventually asked a question about his location when Hunziker first saw him.

On appeal, defendant demonstrated neither error nor prejudice from the requirement that he remain seated throughout his questioning. The trial court may restrict the movement of a defendant representing himself. (*People v. Clark* (1992) 3 Cal.4th 41, 146, overruled on other ground in *People v. Pearson* (2013) 56 Cal.4th 393, 462.) Even if the restriction in this case was greater than that in *Clark*, defendant

6

fails to show the court erred in concluding that such restriction was required for courtroom security.

Defendant's focus on the court's denial of his right to represent himself is not persuasive because the court simply limited his movement; not his right to represent himself. The trial court did not limit defendant's ability to present evidence or cross-examine witnesses but instead simply required him to remain seated while conducting those tasks. The fact that defendant was required to seek assistance in displaying an exhibit did not hinder his defense as he was able to display the exhibit with the assistance of the prosecutor. While defendant argues that he was not able to ask about whether there were pictures from security cameras, he fails to show that he was prohibited from asking such question or that any additional photographs would have assisted him. In short, defendant demonstrates no connection between the order he remain seated and his ability to present a defense.

Nor is there any record support for defendant's claim that jurors must have speculated that he was dangerous. One juror asked if defendant had a disability, suggesting that that juror questioned defendant's mobility. Nothing in the record suggested that the jurors were led to believe that defendant was dangerous. In answering the juror's question, the trial court did not refer to any characteristic of defendant. Even assuming the court erred in requiring defendant to remain seated, the error was harmless beyond a reasonable doubt.[2]

### 2. *Late Discovery Did Not Deny Defendant Due Process*

As described above, defendant was not timely provided all of the discovery items he requested. On appeal, he argues that the late discovery violated his right to

---

[2] Defendant's reliance on *Wilson v. Superior Court* (1978) 21 Cal.3d 816 is misplaced. *Wilson* concerned a defendant's "in-jail" privileges. (*Id*. at p. 819.) The defendant's privileges were unilaterally restricted by the local sheriff's department and then they were subsequently limited by the court. (*Id*. at p. 820.) The appellate court held that the defendant's privileges should not have been restricted without notice and a hearing. (*Id*. at p. 822.) *Wilson* did not involve a defendant's ability to stand while representing himself and does not assist in evaluating defendant's argument.

7

due process. As we explain, he fails to demonstrate any due process violation and fails to show any prejudice requiring the reversal of his conviction.

"'The prosecution has a duty under the Fourteenth Amendment's due process clause to disclose evidence to a criminal defendant [citation] [¶] . . . [that is] both favorable to the defendant and material on either guilt or punishment. [Citation.] [¶] Evidence is "favorable" if it either helps the defendant or hurts the prosecution, as by impeaching one of its witnesses. [Citation.] [¶] Evidence is "material" ". . . if there is a reasonable probability that, had [it] been disclosed to the defense, the result . . . would have been different."'" (*People v. Gutierrez* (2013) 214 Cal.App.4th 343, 348.)

Here, the only evidence that was favorable to defendant was that his fingerprints were not found on the revolver Deputy Sheriff Hunziker recovered from the location defendant threw it. Jurors heard evidence that "there were no prints" on the gun. Defendant elicited testimony that the gun was not processed until July 17, the day voir dire started. Defendant also elicited testimony that "there's no fingerprints on the gun." Therefore, the favorable material evidence was provided to defendant and presented to jurors. Defendant does not show his due process rights were violated.

To the extent defendant is arguing that he was not ready to present a defense because he did not receive other discovery earlier, defendant failed to request a continuance and failed to show that he would suffer any prejudice from the delayed discovery. As described above in detail, the trial court afforded defendant numerous opportunities to identify prejudice from the delay in providing the evidence, and defendant identified none. There was good reason for defendant's failure to identify prejudice. He was aware of the scene of the shooting depicted in the photographs because he was there. He was aware of his interview because he was the person interviewed. Although defendant was not aware of the result of the gunshot residue test, in another portion of his brief, defendant states that he "questioned GSR expert Cavaleri at length and cross-examined the officer who performed the GSR test."

On appeal, defendant also fails to demonstrate any prejudice. Although defendant argues that his defense was impeded, he provides no explanation of how the

8

late discovery impeded his defense. His "generalized statements are insufficient to demonstrate prejudice." (*People v. Verdugo* (2010) 50 Cal.4th 263, 282.) Defendant also argues that the court should have instructed the jurors to "consider the late discovery in weighing the prosecution's case," but he did not request such instruction in the trial court.[3] Nor does he provide any legal basis for concluding such an instruction should have been given in this case. Finally, no showing is made that the instruction would have had any impact on the verdict, and therefore even if the instruction should have been given reversal is not warranted. (Cf. *People v. Riggs* (2008) 44 Cal.4th 248, 311.)

### 3. *The Jurors Brief Conversation with a Prosecution Witness Does Not Require Reversal of Defendant's Conviction*

Defendant next argues that jurors were improperly influenced by a prosecution witness who they spoke to in the hallway. As we shall explain, although the jurors should not have spoken to the witness, defendant demonstrates no improper influence.

---

[3] CALCRIM No. 306 provides:

"Both the People and the defense must disclose their evidence to the other side before trial, within the time limits set by law. Failure to follow this rule may deny the other side the chance to produce all relevant evidence, to counter opposing evidence, or to receive a fair trial.

"An attorney for the (People/defense) failed to disclose: _____ *<describe evidence that was not disclosed>* [within the legal time period].

"In evaluating the weight and significance of that evidence, you may consider the effect, if any, of that late disclosure.

"[However, the fact that the defendant's attorney failed to disclose evidence [within the legal time period] is not evidence that the defendant committed a crime.]

"*<Consider for multiple defendant cases>*

"[You must not consider the fact that an attorney for defendant _____ *<insert defendant's name>* failed to disclose evidence when you decide the charges against defendant[s] _____ *<insert names of other defendant[s]>*.]"

9

*A. Additional background*

Joseph Cavaleri, a chemist in the trace evidence section of the Los Angeles County Sheriff's Department testified for the prosecution. He explained that when a gun is fired, gunshot residue particles emanate off the gun. Persons firing the gun may have gunshot residue on their hands or their clothing. Gunshot residue also may be deposited on a person standing next to someone firing a gun.

In this case, Cavaleri found defendant's hands had 13 particles consistent with gunshot residue. He concluded defendant "could have fired a gun, handled a gun, been next to somebody who fired a gun, or otherwise touched a surface that had gunshot residue on it . . . ."

On cross-examination, Cavaleri acknowledged that fireworks may generate the same particles found in gunshot residue. He could not opine with certainty that defendant fired a gun. Cavaleri did not receive photographs of defendant's hands and never received such photographs when he analyzed gunshot residue. Defendant's clothing was not tested. Cavaleri testified that if one of the jurors fired a gun it was likely the two jurors seated next to the juror who fired the gun also would have gunshot residue on their persons.

After Cavaleri testified, some of the jurors spoke to him in the hallway. One said, "Nice to have people like you." Another said, "I learned a lot today." Someone also said, "You're the man." The court indicated that it would admonish the jurors to refrain from communicating with any witnesses or parties in the case. Defendant did not raise any objection or request a mistrial. Defendant reminded the court to admonish jurors, and the court instructed jurors: "[L]et me remind you that you are to have no conversation whatsoever with any witnesses or any parties or any of the lawyers associated with this case. That means don't say, 'hello.' Don't say any comment whatsoever to anyone."

On appeal defendant argues that "[t]he jurors' misconduct—although clearly not malevolent—was prejudicial, as it clearly appears that numerous jurors did not remain neutral after contacting Cavaleri outside the courtroom."

10

*B. Analysis*

Although it is hard to imagine why the trial court did not make inquiry of the jurors to ascertain whether any of the comments reflected juror bias or prejudging the case, we find on this record and in light of defendant's failure to object or make any request that reversal is not required. Our Supreme Court has "held that trivial violations of th[e] rule [that jurors do not speak to anyone connected to the case] do not require reversal because no prejudice to the defendant resulted." (*People v. Wilson* (2008) 44 Cal.4th 758, 839.) Here, defendant fails to show that the ""'nature and seriousness of the misconduct"''" demonstrated actual prejudice. (*Ibid*., italics omitted.) Jurors spoke only briefly to Cavaleri. Deputy Sheriff Hunziker, not Cavaleri, was the critical witness because he first hand observed defendant's crimes, called for assistance, and retrieved defendant's firearm. Cavaleri simply supported Hunziker's testimony. In short, although jurors should not have spoken to Cavaleri, defendant fails to show that reversal of his conviction is required.

**4. The Trial Court Was Not Required to Instruct Jurors on Negligent Discharge of a Firearm**

Defendant next argues that the trial court had a sua sponte duty to instruct jurors on negligent discharge of a firearm. Negligent discharge of a firearm is a lesser included offense of shooting at an occupied vehicle. (*People v. Overman* (2005) 126 Cal.App.4th 1344, 1360.)

A trial court has a sua sponte duty to instruct on lesser included offenses when substantial evidence supports the instruction. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1008.) ""'Substantial evidence is evidence sufficient to 'deserve consideration by the jury,' that is, evidence that a reasonable jury could find persuasive."''" (*Ibid*.)

Here, the instruction was not warranted because no evidence supported the theory that defendant negligently discharged a firearm. Defendant did not testify and the only evidence was that defendant shot at the occupants of a vehicle who had stopped to ask for directions. Additionally, defendant made clear that this case was

11

solely about identity. Contrary to defendant's argument, the record contains no evidence from which a reasonable juror could have concluded defendant did not fire at an occupant of the other vehicle.

## 5. Continuance

The trial court granted defendant numerous posttrial continuances. On appeal, defendant argues that the court should have granted him an additional posttrial continuance so that he could have further investigated the person who was shot in the other vehicle. Based on the appellate record, defendant demonstrates neither good cause for an additional continuance nor prejudice.

### A. Background

Defendant was convicted July 23, 2014, and on the same day the court found the alleged priors true. Defendant then requested an attorney. The court expressed concern that appointing counsel would cause a delay in sentencing. Defendant assured the court that there would be no significant delay because it would "be no problem with me informing him of what took place . . . ."

The next day, the court granted defendant's request, and a deputy alternate public defender appeared to represent defendant. The court continued the case to August 6, 2014.

When defendant appeared on August 7, he requested a *Marsden* hearing. (*People v. Marsden* (1970) 2 Cal.3d 118.) Defendant expressed concern that his counsel would not raise grounds defendant believed should be raised. He requested to represent himself. The court restored defendant's pro. per. status. Defendant indicated that he wanted to file a new trial motion based on jury misconduct, judicial misconduct, and vouching for witnesses. Additionally, defendant requested a 60-day continuance, arguing that he had new evidence with respect to the victim. Defendant requested an investigator in order to summon the victim to court. Defendant did not know whether the victim would help him. He stated, ". . . I don't know. I've got to send investigators out there to see what they're saying and whatnot." The court continued the matter to September 8, 2014.

12

On September 8, 2014, the court denied defendant's request for trial transcripts. The court ordered defendant to file his motion for new trial 10 days before the next court date. The court continued the sentencing hearing to October 6, 2014.

On October 6, 2014, defendant argued that he did not timely receive discovery. Defendant stated that he was trying to get the victim to participate in this case. The court indicated that it had approved defendant's first request for an investigator and defendant was requesting a different person. Defendant responded that he was unable to obtain the necessary form for the first investigator because it was not available to him. Defendant argued he could not file his motion for new trial without an investigation. Defendant argued he needed an investigator to prepare an "affirmative defense." The court denied defendant's requested additional continuance. The court ordered defendant to file a sentencing memorandum by October 10, 2014, if he intended to file one.

On October 10, defendant again requested a continuance. Defendant stated that he had contact with the victim and was trying to locate him. Defendant raised a new trial motion, arguing among other things that the victim came forward during trial. The court denied the new trial motion and sentenced defendant.

*B. Analysis*

A trial court has broad discretion to grant a continuance when good cause exists for a continuance. (*People v. Alexander* (2010) 49 Cal.4th 846, 934.) "Whether a defendant has affirmatively demonstrated that justice requires a continuance is a factual matter and, in the absence of an abuse of discretion, the trial court's determination will not be disturbed on appeal." (*People v. Weston* (1981) 114 Cal.App.3d 764, 777.) "'Particularly, when the party seeks a continuance to secure a witness's testimony, the party must show that he exercised due diligence to secure the witness's attendance, that the witness would be available to testify within a reasonable time, that the testimony was material and not cumulative.'" (*People v. Johnson* (2013) 218 Cal.App.4th 938, 942.)

13

Here, the trial court did not abuse its broad discretion. Defendant was afforded a reasonable time—over two months—to prepare his new trial motion. (See *People v. Alexander, supra*, 49 Cal.4th at p. 934.) Defendant made no showing that he had exercised diligence to secure the victim's attendance; he made no showing that the victim would testify within a reasonable time; or most significantly that the victim would provide material evidence. When asked what evidence the victim would provide, defendant responded that he did not know. The court continued sentencing for over two months, and defendant still had not produced any evidence that the victim would testify favorably to him. Under these circumstances, defendant failed to demonstrate good cause for an additional continuance. The trial court properly denied his request.

Even if the court abused its discretion in denying defendant an additional continuance, he demonstrated no prejudice. The record contains no exculpatory evidence from the alleged victim. The trial court had granted defendant numerous continuances, and he failed to obtain any exculpatory evidence. Even if defendant had obtained exculpatory evidence, he fails to demonstrate a new trial would have been warranted. A new trial motion based on newly discovered evidence requires a showing that the evidence could not with reasonable diligence have been produced at trial and that a different result is probable upon retrial. (*People v. Cua* (2011) 191 Cal.App.4th 582, 608.) The record does not support either element.

Most significantly, the record does not support the conclusion that a different result is probable upon retrial. Even assuming the victim would testify that defendant did not shoot at him, defendant fails to show that a different result is probable. The evidence in this case was overwhelming. Deputy Sheriff Hunziker observed defendant shooting into the occupied vehicle. In addition to Hunziker, another eyewitness observed the shooting. Hunziker observed defendant throw the gun and then attempt to flee on foot. Defendant was observed by other deputies and apprehended. Defendant's sole defense—mistaken identity—was especially weak given that he was observed the entire time from the shooting until he was apprehended.

14

### 6. Penal Code Section 654 Does Not Prohibit Consecutive Sentences for Defendant's Shooting at an Occupied Vehicle and Being a Felon in Possession of a Firearm

The trial court sentenced defendant to the high term for shooting at an occupied vehicle. It imposed a consecutive term of 16 months for being a felon in possession of a firearm. On appeal, defendant argues that the court should have stayed the sentence for possession of a firearm because his possession was indivisible from his shooting at an occupied vehicle.[4] As we shall explain, we find no error.

Penal Code section 654, subdivision (a) provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Section 654 "prohibits multiple punishment for a single physical act that violates different provisions of law." (*People v. Jones* (2012) 54 Cal.4th 350, 358.)

An ex-felon who "owns, possesses, or has custody or control of a firearm commits a felony. *Implicitly, the crime is committed the instant the felon in any way has a firearm within his control.*" (*People v. Ratcliffe* (1990) 223 Cal.App.3d 1401, 1410.) Penal Code section 654 bars multiple punishment for possession of a weapon by an ex-felon and a shooting offense when the evidence shows "that fortuitous circumstances put the firearm in the defendant's hand only at the instant of committing another offense . . . ." (*Ratcliffe*, at p. 1412.) In *People v. Jones* (2002) 103 Cal.App.4th 1139, 1141, the court concluded that "when an ex-felon commits a crime using a firearm, and arrives at the crime scene already in possession of the firearm, it may reasonably be inferred that the firearm possession is a separate and antecedent offense, carried out with an independent, distinct intent from the primary crime.

---

[4] Defendant also argues the court should have stayed his sentence for possession of ammunition, but the record indicates the court stayed that sentence.

Therefore, section 654 will not bar punishment for both firearm possession by a felon [citation] and for the primary crime of which the defendant is convicted."

Here, there was no evidence that defendant possessed the gun only simultaneously with his shooting at the occupied vehicle. Defendant must have possessed the weapon before because he exited the vehicle and immediately began shooting. Ayala described the shooter as exiting the car and shooting at a person in the other car. In order for defendant to immediately shoot at the occupant of the other vehicle who had just stopped to ask directions, the only reasonable inference is that he possessed the gun prior to the shooting. Moreover, it cannot be disputed that defendant possessed the gun after the shooting as he threw it to the ground when he attempted to flee. Deputy Sheriff Hunziker observed defendant throw the gun to the ground, and no contrary evidence was presented.

## DISPOSITION

The judgment is affirmed.

FLIER, J.

WE CONCUR:

BIGELOW, P. J.

RUBIN, J.

16