Filed 2/6/24  P. v. Hughes CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B325381 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. TA134923 |
| LEROY HUGHES, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, John J. Lonergan, Judge. Affirmed.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

In 2015, defendant and appellant Leroy Hughes pleaded no contest to one count of attempted murder and admitted the personal use of a firearm during the commission of that crime. In 2022, Hughes filed a petition for resentencing under former Penal Code section 1170.95.[1] The trial court summarily denied the petition. On appeal, Hughes contends that the court improperly relied on the preliminary hearing transcript and his trial counsel's concession that he was the actual shooter to deny his petition without holding an evidentiary hearing. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

### 1. Proceedings Related to the Underlying Offense

#### 1.1. Felony Complaint

On September 4, 2014, the Los Angeles County District Attorney filed a felony complaint alleging that Hughes committed four counts of willful, deliberate and premeditated attempted murder (§ 664/187, subd. (a)). It further alleged that Hughes personally and intentionally discharged a firearm (§ 12022.53, subds. (c), (d)) and personally used a firearm (*id.*, subd. (b)).

#### 1.2. Preliminary Hearing

A preliminary hearing took place on November 13, 2014. The People called Semaj Brown, Mastin Hunter, and Officers

---

[1] All undesignated statutory references are to the Penal Code. Hughes filed his petition for resentencing under former section 1170.95, which the Legislature later renumbered to section 1172.6 without substantive change. (Stats. 2022, ch. 58, § 10.) We hereafter cite to section 1172.6 for ease of reference.

Manuel Mendieta and Peter Verschueren as witnesses. Brown testified that, on May 4, 2014, he and two others were passengers in a car driven by Hunter when another car began chasing them. After their car crashed, Brown got out. As he began running in an alley, he heard three gunshots. He was subsequently struck by a car. He was not certain whether it was the same car that chased them but testified that it appeared to be. He stated that he did not see anyone in the court that was in the area on the day of the shooting.

Hunter denied seeing anyone in court who shot him in May of 2014. He testified that he was shot while trying to escape another car, but that he did not remember when the shooting took place or any details surrounding it. He also testified that he did not recall speaking with an officer, viewing any photographs, or circling any person in the photographs. He denied being able to see the photographs in the exhibit placed in front of him and denied that he circled Hughes's photograph. He further testified that he did not remember having a conversation with Officer Verschueren. Hunter also stated on cross-examination that he never saw who shot him.

Officer Mendieta, the arresting officer, testified that Hughes had admitted to him that he was a member of the Front Street Crips. Hunter was a member of the Back Street Crips, a rival gang to the Front Street Crips. Hughes's brother, who was also a member of the Front Street gang, was the victim of a shooting that took place on May 4, 2014. Officer Mendieta testified that, hypothetically, if a gang member is shot and his brother, also a member of the same gang, shoots another person ten minutes later, he would believe the second crime was done for the benefit of a criminal street gang.

Officer Verschueren, the investigating officer, testified that he was assigned to investigate a shooting that took place on May 4, 2014. He spoke with Hunter as part of his investigation and testified that Hunter told him that he was stopped at a red light when a dark colored vehicle pulled up alongside the car he was driving. There was an exchange of words and Hunter believed that the front passenger of the other car was grabbing for a handgun or other weapon. Hunter stated that he turned at the light and attempted to escape and ultimately crashed into a van. Hunter told Officer Verschueren that he then got out of the car and ran to an alley, where he was shot. Officer Verschueren showed Hunter a photographic lineup consisting of six photographs and Hunter indicated that the individual in position two, Hughes, was the shooter. Officer Verschueren had Hunter circle Hughes's photograph and initial and date it.

Officer Verschueren further testified that he spoke with Tyshay Galloway, who had allowed Hunter, her boyfriend, to drive her car. She told Officer Verschueren that they turned at the stoplight and accelerated quickly before crashing into a van. Galloway hid behind the car as a dark-colored sedan turned onto the street. She observed the right front passenger extend his hand out the window while holding a firearm and stated that shots were fired.

### 1.3. Information

In an information dated December 1, 2014, the Los Angeles County District Attorney charged Hughes with four counts of attempted murder (§ 664/187, subd. (a)) and alleged that Hughes personally and intentionally discharged a firearm (§ 12022.53, subds. (c), (d)) and personally used a firearm (*id.*, subd. (b)).

4

### 1.4.  Plea and Sentencing

On July 24, 2015, Hughes pleaded no contest to the attempted murder of Hunter and admitted the personal use of a firearm under section 12022.53, subdivision (b). Hughes's counsel stipulated to "a factual basis based on the police reports, preliminary hearing transcript and additional discovery." The court accepted Hughes's plea. Hughes was sentenced to a total of 15 years pursuant to the plea agreement (five years for attempted murder with a 10-year enhancement for personal use of a firearm).

### 2.  Petition for Resentencing

In March 2022, Hughes filed a form petition for resentencing in which he checked the boxes stating that a complaint was filed against him that allowed the prosecution to proceed under the natural and probable consequences doctrine, he was convicted of attempted murder, and he could not presently be convicted of attempted murder under sections 188 and 189. Hughes also requested the appointment of counsel. In response, the prosecutor argued that Hughes was ineligible for resentencing because he was prosecuted as a direct perpetrator, not on any theory that required malice to be imputed. In the reply brief filed by his counsel, Hughes did not refute that he was prosecuted as a direct perpetrator but recited the legal standard for a petition for resentencing and asserted, without discussion, that he established a prima facie case for relief.

At oral argument, the prosecutor submitted on the briefing. The attorney appearing on Hughes's behalf stated: "All I would indicate for the record is that I was instructed by Ms. Kelley [Hughes's counsel at the plea hearing] that as the client is the

5

actual shooter in this matter we are submitting on the motion." The court stated: "That's correct as [the prosecutor] pointed out and that is clear from the court file . . . . Based on the fact that he is the actual shooter, he is ineligible for the relief he is requesting; therefore his petition is denied."

Hughes timely appealed.

## DISCUSSION

### 1. Legal Background

As amended by Senate Bill No. 775, section 1172.6, subdivision (a) provides: "A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts."

An offender must file a petition in the sentencing court averring that: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder

6

or attempted murder[;] [¶] [and] (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(1)–(3); see also *id*., subd. (b)(1)(A).) Additionally, the petition shall state "[w]hether the petitioner requests the appointment of counsel." (*Id*., subd. (b)(1)(C).)

"Upon receiving a petition in which the information required by this subdivision is set forth or a petition where any missing information can readily be ascertained by the court, if the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner." (§ 1172.6, subd. (b)(3).) The prosecutor shall file a response within 60 days of the service of the petition, and the petitioner may file a reply within 30 days of the response. (*Id*., subd. (c).) When briefing has been completed, "the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." (*Ibid*.) "If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause." (*Ibid*.)

In determining whether a petitioner has made a prima facie showing of entitlement to relief, the trial court's inquiry will necessarily be informed by the record of conviction, which will facilitate the court in distinguishing "petitions with potential merit from those that are clearly meritless." (*People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*).) The court is prohibited from engaging in " 'factfinding involving the weighing of the evidence or the exercise of discretion.' " (*Id*. at p. 972.) Rather, the court must " ' "take[ ] [the] petitioner's factual allegations as true" ' " and make a " ' "preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual

7

allegations were proved." ' " (*Id*. at p. 971.) Summary denial of the petition is appropriate where the record of conviction establishes the petitioner is ineligible for resentencing as a matter of law. (*People v. Estrada* (2022) 77 Cal.App.5th 941, 945; *People v. Coley* (2022) 77 Cal.App.5th 539, 548.)

We independently review the trial court's determination that the petitioner failed to make a prima facie showing for relief. (*People v. Harden* (2022) 81 Cal.App.5th 45, 52; *People v. Eynon* (2021) 68 Cal.App.5th 967, 975.) A denial at this stage is appropriate if the record of conviction demonstrates that the petitioner is ineligible for relief as a matter of law. (*Lewis*, *supra*, 11 Cal.5th at p. 960.)

## 2. Analysis

We agree with Hughes that the information and his plea of no contest to the generic crime of attempted murder did not admit facts supporting liability under any particular theory. In agreeing to the plea, Hughes did not admit to or stipulate to any particular theory of attempted murder. (*People v. Flores* (2022) 76 Cal.App.5th 974, 987 (*Flores*).) Hughes's admission that he personally used a firearm under section 12022.53, subdivision (b) also did not definitively establish that he was the actual shooter. As the Supreme Court explained in *People v. Jones* (2003) 30 Cal.4th 1084, 1119–1120, a finding the defendant "personally used a firearm in the commission" of a felony murder "would not in itself prove defendant was the actual killer" because if, for example, two coparticipants in a felony "display guns" for intimidation, and one "shoots and kills a victim, both [participants] could be found to have personally used a gun in . . . the felony murder, even though only one is the actual killer."

8

However, the record of conviction was not limited to the information and plea. The preliminary hearing transcript is also part of that record and may be considered at the prima facie stage, at least when it is stipulated to as the factual basis of the plea, as was the case here. (*People v. Davenport* (2021) 71 Cal.App.5th 476, 481–482 [holding that preliminary hearing transcript is part of record of conviction but trial court erred in considering facts therein when petitioner did not stipulate to it as the factual basis for the plea]; but see *People v. Pickett* (2023) 93 Cal.App.5th 982, 992–993 [rejecting argument that preliminary hearing transcript may only be considered when stipulated to as the factual basis for a plea].) The trial court determined, based on its review of the record of conviction and the concession of Hughes's counsel, that Hughes was the actual shooter. Hughes did not discuss the preliminary hearing transcript in any depth in his opening brief and did not mention his trial counsel's concession in that brief.

On reply, Hughes contends that section 1172.6 does not require him to rebut preliminary hearing evidence at the prima facie stage. There is a split of authority as to the import of the preliminary hearing transcript in determining a petitioner's eligibility for resentencing under section 1172.6. In *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1161, the court noted that the preliminary hearing transcript contained no argument as to the applicability of the natural and probable consequences doctrine and nothing indicated that the court considered that theory in holding the petitioner to answer. In affirming the denial of the petition for resentencing, the court explained: "If [the petitioner] had gone to trial, and the parties had presented no argument and the trial court had given no instructions regarding

felony murder or murder under a natural and probable consequences theory, there is no question [the petitioner] would be unable to make a prima facie showing that he is entitled to relief under section 1170.95. [Citation.] [The petitioner's] murder conviction after a guilty plea should not be accorded less weight and finality than a murder conviction after a jury trial, as the transcripts from the preliminary and plea hearings demonstrate [the petitioner] was convicted of second degree murder as a direct aider and abettor." (*Id.* at p. 1167.)

The court in *People v. Rivera* (2021) 62 Cal.App.5th 217 (*Rivera*) declined to follow *Nguyen*. The court agreed with *Nguyen* that a "murder conviction after a plea has just as much 'weight and finality' as one after a trial [citation]" but disagreed that the "theory underlying each type of conviction can be ascertained with the same degree of certainty." (*Id.* at p. 236.) "The fact that a petitioner was not 'convicted of felony murder or murder under a natural and probable consequences theory' [citation] at trial may be conclusively determined if, for example, the jury did not receive instructions on either theory." (*Ibid.*) "In contrast, when a petitioner has entered a plea to murder after being charged by information or indicted, the record of conviction will generally lack any comparable assurance of the basis for the conviction." (*Id.* at p. 237.) "And while a grand jury receives instructions, those instructions do not fix the theories on which a case may be prosecuted or establish the basis for a postindictment plea." (*Ibid.*) The court rejected the argument that the absence of any mention of an underlying offense that could support felony murder or murder under the natural and probable consequences doctrine in the preplea record precluded relief as a matter of law. (*Id.* at p. 238.) In the *Rivera* court's view, "when a petitioner

disputes that the evidence presented at a preplea proceeding demonstrates his or her guilt under a still-valid theory of murder, and no ' "readily ascertainable facts" ' definitively prove otherwise, a trial court cannot deny a petition at the prima facie stage without resorting to ' "factfinding involving the weighing of evidence or the exercise of discretion." ' [Citation.]" (*Ibid.*)

Thus, the court in *Rivera* held "that a defendant who stipulated to a grand jury transcript as the factual basis of the plea may make a prima facie showing of eligibility for relief by identifying a scenario under which he or she was guilty of murder only under a now-invalid theory, even if the record of conviction does not demonstrate that the indictment rested on that scenario." (*Rivera, supra*, 62 Cal.App.5th at p. 224.) In *Rivera*, the petitioner "not only filed a facially sufficient petition but, with the assistance of counsel, offered a theory under which the evidence presented to the grand jury was consistent with his guilt of murder under the natural and probable consequences doctrine, based upon an intent to participate in a target offense of assault. [Citation.] In doing so, he created a factual dispute that cannot be resolved at the prima facie stage since nothing in the record definitively foreclosed his theory." (*Id.* at p. 239.)

In *People v. Patton* (2023) 89 Cal.App.5th 649 (*Patton*), a panel of this Division determined that the petitioner, who was convicted of attempted murder, was not entitled to relief under section 1172.6 as a matter of law where he failed to controvert preliminary hearing transcript testimony of police officers who viewed video surveillance of the crime and concluded that the petitioner was the actual shooter and had acted alone. (*Patton,* at pp. 652–653, 657–658.) The *Patton* court observed that the petitioner "never offered any theory to support his implicit

11

contention now that he was an accomplice and not the person who actually shot [the victim]" before the trial court and, on appeal, never "even suggested what facts he has to demonstrate that someone else shot [the victim] and he was merely an accomplice." (*Id.* at p. 657.) It further concluded that, because the testimony of the officers was uncontroverted, no factfinding or weighing of evidence was required to conclude that the petitioner was not entitled to relief as a matter of law. (*Id.* at p. 658.)[2] On June 28, 2023, the Supreme Court granted a petition for review of *Patton* and denied a request for its depublication. (*People v. Patton* (June 28, 2023, S279670) __Cal.5th__ [2023 Cal. Lexis 3636].)

Because Hughes was convicted of attempted murder, he can only seek relief under section 1172.6 if he was convicted under the natural and probable consequences doctrine, which provided that " 'an accomplice is guilty not only of the offense he or she directly aided or abetted (i.e., the target offense), but also of any other offense committed by the direct perpetrator that was the "natural and probable consequence" of the crime the accomplice aided and abetted (i.e., the nontarget offense).' " (*People v. Curiel* (2023) 15 Cal.5th 433, 449.) Hughes had no codefendant, nor was any target offense discussed at the

---

[2] We perceive no inconsistency between the decisions in *Rivera* and *Patton*. In *Patton*, *supra*, 89 Cal.App.5th 649, the petitioner filed a form petition and no reply brief. (*Id.* at p. 654.) The court in *Rivera* expressly left "open the possibility that if a petitioner who entered a plea to murder after being indicted submits a form petition making the required declarations but does not in any way contest the evidence presented to the grand jury, a trial court can rely on the grand jury transcript to deny the petition before holding an evidentiary hearing." (*Rivera*, *supra*, 62 Cal.App.5th at p. 238.)

preliminary hearing. Accepting for purposes of argument that the absence of any mention of the natural and probable consequences doctrine or any target offense in the preplea record does not preclude Hughes from seeking relief under section 1172.6 as a matter of law (*Rivera, supra*, 62 Cal.App.5th at p. 238), the *Rivera* court nevertheless indicated that, in order to make a prima facie showing of eligibility for relief, a petitioner must identify "a scenario under which he or she was guilty of murder only under a now-invalid theory, even if the record of conviction does not demonstrate that the indictment rested on that scenario." (*Id.* at p. 224; see also *People v. Pickett, supra*, 93 Cal.App.5th at p. 993 [petitioner failed to make prima facie case of eligibility for relief where "there [was] no allegation or evidence of an accomplice in the killing"].) After counsel was appointed, Hughes did not identify any theory as to how the evidence presented at the preliminary hearing was consistent with guilt for attempted murder under the natural and probable consequences doctrine. The only factual assertion made below by Hughes or his counsel was that he *was* the actual shooter.

Hughes points out in his reply brief that Hunter recanted his prior identification of Hughes as the shooter, as to which Officer Verschueren testified,[3] and therefore argues that the

---

[3] Section 1172.6, subdivision (d)(3), which was in effect at the time of the proceedings below (Stats. 2021, ch. 551, § 2), provides that "hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of [s]ection 872 shall be excluded from the [evidentiary] hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule." Section 872, subdivision (b) created a new exception to the hearsay rule which allows a qualified investigative officer to testify at a preliminary hearing about "otherwise inadmissible hearsay statements made to

court's conclusion that he was the actual shooter was disputed and required judicial factfinding that is impermissible at the prima facie stage. This argument would be well taken if not raised for the first time on reply. (*People v. Rangel* (2016) 62 Cal.4th 1192, 1218–1219 [defendant forfeits an argument not raised until the reply brief].) Nevertheless, even accepting that Hughes was not required to identify a scenario under which he was convicted under a now-impermissible doctrine before the trial court *and* that the court erred in relying on facts in the preliminary hearing transcript to summarily deny his petition, Hughes fails to establish that any error was prejudicial when the court also relied on the express concession of his trial counsel that he was the actual shooter. We evaluate any error in denying a petition under section 1172.6 under the harmless error standard of *People v. Watson* (1956) 46 Cal.2d 818, 836. (*Lewis*, *supra*, 11 Cal.5th at pp. 957–958, 973–974; *Flores*, *supra*, 76 Cal.App.5th at p. 986.)

"Oral statements of counsel may be treated as judicial admissions if they were intended to be such or reasonably construed by the court or the other party as such. This rule, however, does not apply 'to admissions which are improvidently

---

*him* by persons *he* has interviewed." (*Tu v. Superior Court* (1992) 5 Cal.App.4th 1617, 1622.) As section 1172.6, subdivision (d)(3) prohibits the use of hearsay evidence admitted under section 872, subdivision (b) at an evidentiary hearing, "we fail to see how such evidence could establish, as a matter of law, a petitioner's ineligibility for resentencing at the prima facie stage." (*Flores*, *supra*, 76 Cal.App.5th at p. 988, fn. omitted; *Patton*, *supra*, 89 Cal.App.5th at p. 652, fn. 2.) However, Hughes forfeited any hearsay objection to Officer Verschueren's testimony by failing to raise it below or in his briefing on appeal. (*People v. Eubanks* (2011) 53 Cal.4th 110, 142.)

or unguardedly made, or which are in any degree ambiguous.' " (*People v. Jackson* (2005) 129 Cal.App.4th 129, 161, fns. omitted.) After reviewing the prima facie hearing transcript, we conclude that the concession was unambiguous, there are no indicia that it was unguardedly made, and it was reasonable for the court to interpret the statement of Hughes's trial counsel as a judicial admission that he was the actual shooter.[4] Hughes argues that "the preliminary hearing evidence was not so unequivocal as to warrant trial counsel's characterization of that evidence as a dispositive showing that appellant was the actual shooter," but does not meaningfully challenge that counsel's statement constituted a judicial admission. Because there was no dispute at the prima facie hearing that Hughes was the actual shooter, he was not entitled to relief under section 1172.6 as a matter of law. (*Patton, supra,* 89 Cal.App.5th at p. 657 [petitioner who was "sole and actual perpetrator of [] attempted murder" was ineligible for resentencing as a matter of law].)

---

[4] In *People v. Jackson, supra,* 129 Cal.App.4th 129, "[t]he stipulation at issue occurred at the end of a lengthy and contentious trial when counsel for both sides and the court were undoubtedly fatigued." (*Id.* at p. 161.) Moreover, "having vigorously fought a motion to suppress the wiretap evidence at the start of trial it does not seem reasonable Jackson's counsel would concede the issue at the close of trial and deliberately throw away a potential winning issue should there be an appeal." (*Ibid.*) Thus, it appeared that the counsel intended only "to stipulate the trial court had found the [wiretap] order lawful, not to concede its lawfulness." (*Ibid.*) Here, the transcript of the prima facie hearing spans only two and a half pages. It does not appear that the concession was inadvertent when Hughes's counsel stated that she was instructed by the attorney who represented Hughes at the plea hearing and prepared his reply brief to submit on the briefing because Hughes was the actual shooter.

Hughes argues that, if his trial counsel's concession is considered a binding admission, he had ineffective assistance of counsel. Our Supreme Court recently confirmed that " 'there is no constitutional right to the effective assistance of counsel' in state postconviction proceedings." (*People v. Delgadillo* (2022) 14 Cal.5th 216, 226; see also *Lewis, supra*, 11 Cal.5th 952, 972 ["There is no unconditional state or federal constitutional right to counsel to pursue collateral relief from a judgment of conviction."].) However, it previously concluded that, once a substantial state created right has been conferred, due process protects the effective exercise of that right to ensure that the right " ' "is not arbitrarily abrogated." ' " (*Wilson v. Superior Court of Los Angeles County* (1978) 21 Cal.3d 816, 823.) Several courts have therefore held that a right to counsel conferred by statute is protected by due process and implicitly includes the right to effective assistance. (See, e.g., *People v. Hill* (2013) 219 Cal.App.4th 646, 652–653 ["although the right to effective assistance of counsel in SVPA proceedings is statutory, that right is protected by the due process clause of the federal Constitution"]; *Conservatorship of David L.* (2008) 164 Cal.App.4th 701, 710 [even if a proposed conservatee has no constitutional right to effective assistance of counsel, once such a right has been conferred by statute, it is protected by the due process clause of the federal Constitution].)

Assuming that Hughes had a constitutional right to effective counsel, Hughes forfeited this argument by failing to raise it in his opening brief. (See *People v. Rangel, supra*, 62 Cal.4th at pp. 1218–1219; *People v. Duff* (2014) 58 Cal.4th 527, 550, fn. 9 [declining to resolve ineffective assistance of counsel claim raised for the first time in reply brief]; *People v. Bona*

16

(2017) 15 Cal.App.5th 511, 517 ["ineffective assistance claim is forfeited because it was not raised in the opening brief"].)[5]

[5] In his opening brief, Hughes broadly asserted that the denial of his petition without an evidentiary hearing violated his due process rights. He did not argue that his due process rights were violated because of ineffective assistance of counsel, and thus any suggestion that the earlier argument preserved the later one is unpersuasive. (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655–656 [matters that lack adequate legal discussion are deemed forfeited].) His earlier due process argument also fails, as a defendant who is ineligible for relief under section 1172.6 as a matter of law has no "expectation of receiving a certain right or benefit" under that provision such that the denial of an evidentiary hearing is a violation of due process.

## DISPOSITION

The order denying Hughes's petition under section 1172.6 is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, Acting P. J.

WE CONCUR:

EGERTON, J.

ADAMS, J.